AMERICAN TRUCKING
ASSOCIATIONS, INCORPORATED,
Petitioner,

v.

FEDERAL HIGHWAY ADMINISTRATION; United States Department of Transportation; United States of America, Respondents.

No. 94–1209.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 28, 1994.

Decided April 5, 1995.

**ARGUED:** Erika Ziebarth Jones, Mayer, Brown & Platt, Washington, DC, for petitioner. John Crawford Hoyle, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondents. **ON BRIEF:** Laurie R. Rubenstein, Mayer, Brown & Platt, Washington, DC, Daniel R. Barney, Lynda S. Mounts, ATA Litigation Center, Alexandria, VA, for petitioner. Frank W. Hunger, Asst. Atty. Gen., Robert V. Zener, Appellate Litigation Counsel, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondents.

Before NIEMEYER and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded by published opinion. Senior Judge PHILLIPS wrote the majority opinion, in which Judge NIEMEYER joined. Judge LUTTIG wrote an opinion concurring in the judgment.

## OPINION

PHILLIPS, Senior Circuit Judge:

The American Trucking Associations, Inc. ("ATA"), the national trade association of the trucking industry, petitions for review of a final rule issued by the Department of Transportation ("DOT") and the Federal Highway Administration ("FHWA") that mandates preemployment testing of commercial truck drivers for alcohol use. ATA argues that the rule is based on an erroneous interpretation of the governing statute and is therefore not a reasonable exercise of the agencies' interpretive discretion. We agree. Accordingly, we vacate the final rule and remand to the

agencies for further rulemaking consistent with this opinion.

## I.

The Omnibus Transportation Employee Testing Act of 1991 ("Act" or "1991 Act"), Pub.L. No. 102–143, Title V, 105 Stat. 952 (1991), directed the Secretary of Transportation to prescribe regulations for the testing of employees for drugs and alcohol in four sectors of the transportation industry. The portion of the Act here at issue directs DOT, "in the interest of commercial motor vehicle safety," to

establish a program which requires motor carriers to conduct preemployment, reasonable suspicion, random, and postaccident testing of the operators of commercial motor vehicles for use, in violation of law or Federal regulation, of alcohol or a controlled substance. The Secretary may also issue regulations, as the Secretary considers appropriate in the interest of safety, for the conduct of periodic recurring testing of such operators for such use in violation of law or Federal regulation.

§ 5(a)(1), 105 Stat. 959 (codified at 49 U.S.C.App. § 2717(a)). Similar provisions apply to air carriers, railroads, and mass transit authorities as well. § 3(a)(1), 105 Stat. 953; § 4, 105 Stat. 957; § 6(b)(1), 105 Stat. 962.

On December 15, 1992, FHWA and the other operating administrations within DOT [1] issued Notices of Proposed Rulemaking ("NPRMs") to implement the Act's mandates. DOT itself issued a common preamble which it explicitly incorporated into each of its administrations' separate NPRMs. 57 Fed.Reg. 59,382 (1992). Because the administrations had previously promulgated drug testing rules,[2] the NPRMs and the DOT preamble focused clearly on alcohol testing. Each NPRM proposed that employers would be required to administer pre-employment, reasonable suspicion, post-accident, and random testing for both drugs and alcohol. DOT chose not to require periodic recurring testing.

In its preamble, DOT reiterated views it had expressed three years earlier that pre-employment testing "is one of the least useful types of tests when dealing with alcohol."[3] It observed that, because off-duty alcohol use—in contrast to off-duty use of controlled substances—is generally legal, "[o]ften, a test result indicating alcohol use may only indicate bad judgment or bad timing (*e.g.,* one notices an employment advertisement after having beer and a hamburger for lunch, immediately applies, and is tested.)" It also acknowledged that pre-employment testing is especially costly. Nonetheless, DOT tersely observed, "[t]he Act requires pre-employment testing." "To make such a test more meaningful," DOT proposed that "employer[s] would have the option of testing during the hiring process or before (preferably just before) the employee starts performing safety-sensitive functions." 57 Fed.Reg. 59,398.

DOT and its operating administrations received numerous comments critical of the proposal to require pre-employment alcohol testing. As DOT later observed, "[a] substantial number of commentators were con-

---

**1.** The FHWA has authority over the trucking industry, one of the four segments of the transportation industry directly affected by the Act. The other affected administrations are the Federal Aviation Administration, the Federal Railroad Administration, and the Federal Transit Administration. Another DOT administration, the Research and Special Programs Administration, also issued an NPRM regarding drug and alcohol testing of employees in the pipeline industry, even though the Act did not so require. Rules ultimately issued by administrations other than FHWA, and affecting industries other than commercial trucking, are not at issue in this case.

**2.** For example, in 1988 FHWA issued a final rule requiring motor carriers to conduct five types of tests for use of controlled substances: preemployment, periodic, reasonable cause, post-accident, and random. 53 Fed.Reg. 47,134, 47,151 (1988) (codified at 49 C.F.R. §§ 391.81–391.123 (1993)).

**3.** In 1989, DOT issued an advance notice of proposed rulemaking ("ANPRM") asking for public comment on whether it should extend its drug-testing rules to cover alcohol use. 54 Fed. Reg. 46,326 (1989). In so doing, it expressly questioned the wisdom of pre-employment alcohol testing. 54 Fed.Reg. 46,337. Final action on the ANPRM was forestalled by congressional passage of the 1991 Act.

cerned about the costs of pre-employment tests and considered them silly 'intelligence' tests and a waste of time." 59 Fed.Reg. 7321 (1994). One comment, submitted jointly by Southwest Airlines and several of its employee associations, directly challenged DOT's assertion that the statute required pre-employment alcohol testing. The comment emphasized that, "under its express terms, the Testing Act requires the [DOT operating administrations] to test for alcohol consumption *only when such consumption violates a law or Federal regulation.*" It continued:

> There is no law or Federal regulation, as far as Southwest is aware, which prohibits persons under the influence of alcohol from appearing at an airline to apply for a safety-sensitive job. This being so, under the express terms of the Testing Act, the FAA would appear to be under no legal mandate to prescribe pre-employment testing rules.

J.A. 114 (Joint Comments of Southwest Airlines et al.). ATA also responded to reiterate the ineffectiveness of pre-employment alcohol testing and to contest DOT's expressed belief that all of its administrations were required to prescribe pre-employment alcohol testing. For this latter argument, ATA relied not upon language from the 1991 Act, but rather upon FHWA's pre-existing statutory discretion (unique among DOT's operating administrations) to "waive, in whole or in part, application of any provision of this chapter or any regulation issued under this chapter with respect to [any] class of persons or class of commercial motor vehicles if the Secretary determines that such waiver is not contrary to the public interest." 49 U.S.C.App. § 2711. ATA urged FHWA to exercise its discretion to waive the pre-employment testing provisions of the Act as to "drivers [of commercial motor vehicles] subject to the pre-employment alcohol testing." J.A. 131 (Comments of ATA on Alcohol Use and Testing).

On February 15, 1994, the agencies published a final rule containing both substantive prohibitions on the use of alcohol and testing requirements. The substantive provisions provide, *inter alia,* that no driver "shall perform safety-sensitive functions [i.e., e.g., waiting to be dispatched, loading, unloading, and driving] within four hours after using alcohol," 59 Fed.Reg. 7507 (to be codified at 49 C.F.R. § 382.207), and that drivers may not have "any measured alcohol concentration" while on duty. 59 Fed.Reg. 7515 (amending 49 C.F.R. § 392.5(a)(2)). The testing provisions retained the requirements for pre-employment testing, in addition to post-accident, reasonable suspicion, and random testing. In its common preamble, DOT largely repeated the remarks regarding pre-employment testing from its earlier NPRM. After noting the criticisms levelled at the rule, DOT stated simply: "The Act explicitly requires pre-employment testing for covered transportation industry employees, so we do not have the discretion to eliminate it from these programs." 59 Fed.Reg. 7321. Yet, DOT continued, in order "[t]o make such a test more meaningful," the final rule would permit employers to administer the "pre-employment" test "any time prior to the first time the employee performs safety-sensitive functions." *Id.*[4]

Finally, FHWA rejected ATA's request that it waive application of the Act's pre-employment testing provision to motor carriers:

> Even accepting, for the sake of argument, the comment's presumption that pre-employment testing is inherently useless, the FHWA does not believe it has the authority to waive all drivers from a major provision of the legislation. Eliminating all pre-employment tests would greatly diminish the number of required tests, and would, in effect, rewrite the statute.

59 Fed.Reg. 7487.

ATA filed a timely petition for review under the Hobbs Act, 28 U.S.C. § 2342(5), which provides for direct review in the courts of appeals of final rules issued by the Interstate Commerce Commission, read in conjunction with 49 U.S.C.App. § 1653(c), which specifies like review of orders issued pursuant to functions transferred from the ICC to DOT. We have previously acknowledged

---

**4.** FHWA's final pre-employment testing rule provides in relevant part: "Prior to the first time a driver performs safety-sensitive functions for an employer, the driver shall undergo testing for alcohol and controlled substances." 59 Fed.Reg. 7508 (to be codified at 49 C.F.R. § 382.301(a)).

that exclusive jurisdiction lies in the courts of appeals to review DOT regulations establishing qualifications for motor carrier employees. *See Clark v. Skinner,* 937 F.2d 123, 126–27 (4th Cir.1991); *see also Center for Auto Safety v. Skinner,* 936 F.2d 1315 (D.C.Cir.1991) (per curiam); *Owner–Operators Indep. Drivers Ass'n v. Skinner,* 931 F.2d 582 (9th Cir.1991).

## II.

ATA advances two arguments in support of its petition. First, it argues, the agencies erred as a matter of law in construing the Act unambiguously to require them to adopt the regulation that they did. Second, ATA avers, FHWA erred in concluding that it lacked discretion under 49 U.S.C.App. § 2711 to waive the Act's pre-employment testing requirements as to the motor carrier industry. We agree with ATA's first contention and therefore vacate FHWA's final rule insofar as it mandates pre-employment testing for alcohol, and remand to the agencies for further rulemaking. In order to provide greater guidance to the agencies on remand, we also reach ATA's second contention. We uphold as a reasonable construction of the waiver provision FHWA's determination that it lacks discretion to waive a statutory provision as to all motor carrier operators.

## A.

■ The standards that govern our review of an agency's rulemaking are well established. Under *Chevron*'s familiar two-step analysis, we first ask "whether Congress has directly spoken to the precise question at issue;" if so, we "must give effect to the unambiguously expressed intent of Congress." If the statute is ambiguous, however, we must defer to the agency's interpretation if reasonable or permissible. *Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *De Osorio v. United States INS,* 10 F.3d 1034, 1037–38 (4th Cir.1993). In this case, there is much disagreement over whether the Act is ambiguous and, if so, wherein the ambiguity lies. Indeed, the agencies themselves have, over time, expressed conflicting views on this

question. We conclude that the statute is in fact rife with ambiguity. We vacate the final rule, however, because the interpretation upon which it was based is plainly unreasonable.

The government's present view is that Congress has not provided clear and coherent guidance regarding the necessity and scope of pre-employment alcohol testing. On one hand, the agencies argue, "the Act plainly does require *pre-employment* testing for illegal alcohol use." Respondents' Brief, at 18. On the other hand, they continue, because "pre-employment use of alcohol is typically not in violation of law or Federal regulation, the statute apparently directs the Secretary to require an impossibility." *Id.* at 19–20. It seems, in other words, that "Congress assumed that it was possible to do a 'pre-employment' test for use of alcohol 'in violation of law or Federal regulation,'" *id.* at 20, and that such an assumption was factually mistaken. If so, the agencies could not adopt any interpretation of the Act that would give full effect to congressional intent. Specifically, the agencies could actualize only one of two mandates: that carriers employ pre-employment testing (along with reasonable suspicion, random, and post-accident testing) for both alcohol and controlled substances; or that carriers test only for that use of alcohol or controlled substances which is "in violation of law or Federal regulation." The agencies could realize the latter directive by foregoing pre-employment alcohol testing, or they could realize the former by requiring pre-employment testing notwithstanding that any alcohol use the tests revealed would be lawful.

The agencies contend, however, that they avoided the horns of this dilemma by exploiting a patent ambiguity in the term "pre-employment." Whereas ATA considers "'pre-employment' ... an unambiguous term, well recognized in the transportation industry and elsewhere, that unambiguously means *prior to hiring an applicant for a job,*" Petitioner's Brief, at 21 n. 15, the government insists that "the term 'employment' is commonly used in two senses—one referring to the legal relationship (the sense petitioner prefers), and the other referring to the

actual activity for which someone is hired." Respondents' Brief, at 21. In this latter "activity" sense, "the term 'employment' refers to 'the doing of the work,' plus a reasonable margin to get to and from the place of work." *Id.* (quoting *California Casualty Indem. Exchange v. Industrial Accident Comm'n,* 21 Cal.2d 751, 135 P.2d 158, 161 (1943)). While it is not unlawful to have consumed alcohol prior to applying for a job with a motor carrier, the argument continues, it *is* unlawful for an employee to "do[ ] the work" (of driving a truck) after having consumed alcohol. Thus, by requiring "pre-employment" testing for alcohol at any time "[p]rior to the first time a driver performs safety-sensitive functions for an employer," 59 Fed.Reg. 7508, the agencies "chose the only interpretation [that] makes sense out of *both* statutory phrases: 1) 'pre-employment' test, and 2) testing 'for violation of law or Federal regulation.' " Respondents' Brief, at 22. Because such an interpretation, the government concludes, is eminently reasonable, the final rule must be upheld under *Chevron* deference.

The most obvious problem with this ingenious argument is that the proffered rationale bears little resemblance to the final rule actually promulgated. As DOT explained in its common preamble, the final rule permits employers to conduct the "pre-employment" test *"any time* prior to the first time the employee performs safety-sensitive functions," including even pre-hiring. 59 Fed. Reg. 7321 (emphasis added). By permitting the pre-employment testing to be conducted pre-hiring (at which point any discovered alcohol use would ordinarily be lawful), the rule does not *"require[ ] motor carriers to* conduct preemployment ... testing of the operators of commercial motor vehicles for use, in violation of law or Federal regulation, of alcohol." Furthermore, limiting pre-em-

ployment testing to "[p]rior to the *first* time a driver performs safety-sensitive functions," 59 Fed.Reg. 7508 (emphasis added), is not consistent with the activity sense of the word "employment." Whereas the "legal relationship" sense of the word refers to a continuous condition, the "activity" sense refers to a discontinuous one. If "employment" means "the doing of the work," Respondents' Brief, at 21, then during the course of his legal relationship with his employer, an individual operator is repeatedly employed, then unemployed, and employed again. Pursuant to the activity sense of employment, the final rule should require testing "prior to *each* time a driver performs safety-sensitive functions."

The point is not simply that the agencies stumbled when it came to putting into effect their clever interpretation of the Act. Rather, we believe, the rules themselves belie the agencies' claim that the statutory interpretation they now advance played any part in their actual decisionmaking process. The government points to no evidence in the record which supports the claim that DOT or FHWA ever recognized either of the two ambiguities that drive the government's present argument.[5] Indeed, the agencies' contemporaneous remarks suggest the contrary. Most telling is DOT's statement in its preamble to the final rules, that "[t]he Act explicitly requires pre-employment testing for covered transportation industry employees, so we do not have the discretion to eliminate it from these programs." 59 Fed. Reg. 7321; *see also* 57 Fed.Reg. 59,398 (preamble to NPRMs). The agencies failed utterly to acknowledge the apparent inconsistency arising from the Act's equally explicit requirement that the testing only be "for use, in violation of law or Federal regulation."

---

**5.** To restate: the government's present argument is that, by discerning ambiguity in the word "pre-employment," the agency was able to cure the supposed ambiguity in the broader phrase "pre-employment ... testing for use, in violation of law or Federal regulation, of alcohol." It deserves mention, perhaps, that this argument relies on two different types of ambiguity. Any ambiguity in the word "employment" lies in "the condition of admitting of two or more mean-

ings," viz., the "legal relationship" and "activity" senses. Only if "pre-employment" is understood to mean "pre-hiring," does the Act become ambiguous in the sense of "maintaining of two or more logically incompatible beliefs or attitudes at the same time," viz., Congress' interest in both pre-hiring alcohol testing and testing only for the unlawful use of drugs or alcohol. *See Webster's Third New Int'l Dictionary* 66 (1981).

■ It is not plausible, moreover, that the agencies had by this time already conceived that "pre-employment" might mean anything other than "pre-hiring." We can reasonably expect that had DOT at that time adopted the unusual "pre-activity" sense of the word it would have said so. DOT's actual explanation that it would permit "pre-employment" testing to be conducted at any time before the first performance of a safety-sensitive function in order to make the rule "more meaningful" indicates instead the agencies' willingness to take some liberties with the plain language of the Act for pragmatic ends. In sum, the record reveals that the agencies read the Act as though it unambiguously requires pre-hiring alcohol testing of all applicants without regard for whether a positive test result would indicate use in violation of law. If the final rule is to withstand even *Chevron*'s deferential judicial review, it is this actual reasoning that must prove reasonable, not the *post hoc* rationalization devised during litigation. As the Supreme Court stressed in *SEC v. Chenery Corp.*, the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943).

As the preceding discussion and the agencies' own arguments during the course of this litigation reveal, however, the interpretation of the Act upon which the agencies actually relied at the rule-making stage is not reasonable. First, if as the agencies themselves now contend, the term "pre-employment" is inherently ambiguous, then the statute did not, as they then believed, unambiguously require pre-hiring testing. Second, for reasons that are somewhat complex, even if, as the agencies then thought, the term did

mean "pre-hiring," the statute's ultimate directive remains ambiguous.

■ The government now argues in its briefs that, if "pre-employment" means "pre-hiring," the statutory language is inherently ambiguous (in the sense of being internally inconsistent). That is, because pre-hiring "use of alcohol is typically not in violation of law or Federal regulation, the statute apparently directs the Secretary to require an impossibility." Respondents' Brief, at 19–20. In fact, though, the conclusion does not follow from the premise. The government's implicit concession that there exists a class of *atypical* job applicants for whom the use of alcohol at the time of application would be unlawful establishes that the plain language of the Act does not direct the Secretary to require a flat impossibility. Thus, if "pre-employment" means "pre-hiring," the plain language of the Act appears to require only pre-hiring testing of the few job applicants whose use of alcohol at the time of application might be in violation of law [6]—for example, persons under a state minimum drinking age,[7] and persons who apply for employment with a motor carrier even while subject to the alcohol-use regulations of their then-current employment.[8] This reading of the statute, though linguistically sound, raises problems of its own. Most conspicuously, it is far from clear how such a reading would really advance the Act's stated purpose of promoting "commercial motor vehicle safety." Therefore, even if "pre-employment" could only reasonably mean "pre-hiring," the overall statutory context and legislative history might provide persuasive grounds to conclude that, despite the force of the Act's plain language, Congress did not really intend to require pre-hiring alcohol testing only of the vanishingly small class of potential applicants

---

6. A conclusion that the Act *requires* pre-employment alcohol testing only of those persons for whom a positive result would indicate use *"in violation of law or Federal regulation"* does not entail that the Act would *prohibit* DOT from requiring pre-employment testing of *all* job applicants (on grounds, say, of administrative efficiency). We need not decide whether DOT could exercise its broad statutory grants of power, *see* 49 U.S.C.App. §§ 2505(a)(3) & 3102(b)(1), to require more comprehensive "pre-employment" alcohol testing than the 1991 Act might mandate.

7. Although the usual minimum age to receive a Commercial Driver's License (CDL) is 21, "farm vehicle drivers" of "articulated motor vehicles" may receive CDLs at 18 if state law permits. *See* 49 C.F.R. § 391.67(a) (qualifying 49 C.F.R. § 391.11(b)(1)).

8. *See, e.g.,* 49 C.F.R. § 219.101(a) (read in conjunction with 45 U.S.C. § 61(b)(3)) (prohibiting alcohol use by railroad employees even during interim rest periods.)

as to whom alcohol use is proscribed by a general law. *Cf. Public Citizen v. United States Dept. of Justice,* 491 U.S. 440, 452–55, 109 S.Ct. 2558, 2565–67, 105 L.Ed.2d 377 (1989).

■ For the foregoing reasons, we conclude that the statute is in critical respects ambiguous. Conceivably, it could be construed to require: pre-activity testing of all applicants; pre-hiring testing only of the small subset of applicants as to whom use of alcohol at the time of the test would be "in violation of law or Federal regulation"; pre-hiring testing of all applicants for use of alcohol and controlled substances; or pre-hiring testing of all applicants but only for use of controlled substances.[9] Accordingly, the agencies' actual interpretation—which ignored all the ambiguities that we have identified—is not reasonable. We must, therefore, vacate the final rule.

On remand, the agencies should determine whether, in light of statutory context and purpose, as well as legislative history, "pre-employment" could reasonably mean anything other than "pre-hiring." If the agen-

cies answer that question in the affirmative and interpret the statute to require pre-activity testing for use of alcohol in violation of law or Federal regulation, they should promulgate a regulation that actualizes that meaning. For reasons already discussed, the existing final rule does not do so.

If (as seems to us more likely) the agencies determine that pre-employment means pre-hiring, they must confront the possibility—apparently not recognized by either the agencies or ATA prior to oral argument—that the Act requires pre-hiring testing of the small universe of applicants as to whom use at the time of the test would be in violation of law or Federal regulation. Whether such a plain language construction of the Act is consistent with congressional intent (and does not lead to an absurd result) we leave for first instance determination by the agencies. We expect that in order to reach a conclusion on this matter the agencies will, among other things, determine just how large the relevant set of applicants would be and consider what consequences should attach to a positive test result.[10] If

9. Judge Luttig, concurring, differs on the critical question whether on this very point the Act is patently ambiguous. He says, *post* at 414, 417, that it is not. But he also says, presumably by way of demonstrating its unambiguity, that "by its plain terms the Act requires alcohol testing, *either* before hiring *or* before work actually begins, for use in violation of law." *Post* at 414 (emphasis added). If this does not fit the dictionary (and commonly understood) meaning of patent ambiguity—"the condition of admitting of two or more meanings," *see supra,* at 410, n. 5— we are hard put to see why not. There may be a misapprehension of the proper connotation of "plain" in matters of statutory interpretation at work here. The fact that a statute "plainly" directs diametrically conflicting courses of action does not allow a "plain meaning" judicial application of its direction; instead, it creates a patent ambiguity of text that requires—and permits— judicial interpretation of that text by resort to extrinsic sources.

Similarly, we disagree, as a matter of simple logic, with Judge Luttig's implication, *see post* at 407, that because the Act also directs reasonable suspicion and random testing, the Government's "pre-activity" reading of "pre-employment" is not a plausible one because it would be redundant. This depends on the assumption that random and reasonable suspicion testing could only be done "pre-activity." But of course they could be done as well during or after the "activity" of

driving, the Act does not speak unambiguously on this matter any more than it does on what "pre-employment" means.

10. Judge Luttig's concurring opinion identifies a number of statutes and regulations that he believes define classes of applicants whose use of alcohol at the time of pre-hiring testing would be "in violation of law or Federal regulation." *See post* at 415–16 & n. 4. We do not think that the literal texts of all of Judge Luttig's examples support his argument. Nor, however, do we think it necessary or particularly useful to engage in an extended debate at this point over which of his examples are sound and which are not. On remand, the agencies should seek to identify the set of "laws or Federal regulations" that could conceivably be violated by an applicant for a covered job *at the time of pre-hiring alcohol testing,* and to determine roughly how many persons might be affected.

Of course, such an inquiry would be unnecessary if, as Judge Luttig apparently believes, the Act unambiguously requires pre-hiring testing of all applicants for illegal alcohol use so long as there theoretically exists a single individual whose use of alcohol at the time of pre-hiring testing could be in violation of law or Federal regulation. Were that the unambiguous meaning of the naked text of this passage of the Act— which the ambiguity in the term "pre-employment" makes it impossible to accept—we are

the agencies interpret the Act to require pre-hiring testing of persons whose alcohol use at the time of the test would be unlawful, then they must, of course, promulgate an appropriate rule. If the agencies disapprove this interpretation, it would be their task, in the exercise of their reasoned decisionmaking, to privilege one of Congress' apparently inconsistent mandates—that all alcohol testing be conducted only for illegal usage, and that all applicants undergo alcohol testing before being hired—and to promulgate a rule that accords with that interpretation.

### B.

■ As an alternative challenge to the final rule, ATA contends that FHWA erred as a matter of law in concluding that it lacked statutory "authority to waive all drivers from a major provision of the legislation." The Commercial Motor Vehicle Safety Act of 1986 (as amended by the 1991 Omnibus Transportation Employee Testing Act) provides in part:

> Notwithstanding any other provision of this chapter ... the Secretary may waive, in whole or in part, application of any provision of this chapter or any regulation issued under this chapter with respect to [any] class of persons or class of commercial motor vehicles if the Secretary determines that such waiver is not contrary to the public interest and does not diminish the safe operation of commercial motor vehicles.

49 U.S.C.App. § 2711.[11] In light of the agencies' acknowledged skepticism regarding the utility of pre-employment alcohol testing, ATA's comment below urged FHWA to

waive the mandate in accord with its statutory discretion. ATA argues in this petition that, even though FHWA would not have been obligated to exercise its discretion as ATA had requested, the agency erred as a matter of law in construing the waiver provision as not to extend the power upon which ATA would rely. Because we have concluded that the agencies' erroneous interpretation of the 1991 Omnibus Act requires that we vacate the final rule, we need not reach ATA's second contention in order to dispose of this petition. We address it nonetheless so as better to inform the agencies' deliberations on remand.

ATA's objection to FHWA's protestation that it lacks power to waive motor carriers from the Act's requirement of pre-employment alcohol testing (such as it may be) can be simply stated:

> The agencies have offered no explanation as to why ... "any provision" and "any regulation" do not encompass this provision and this regulation. The plain language of the statute provides only two prerequisites to the Secretary's exercise of his waiver authority: his determination that a waiver "is not contrary to the public interest" and his determination that a waiver "does not diminish the safe operation of commercial motor vehicles."

Petitioner's Brief, at 26. But this argument misapprehends the agencies' reasoning, which is that "class" denotes something less than the whole, and "waiver" is distinguished from "repeal." "In short," the government explains, "waivers are a device for making sure that a general rule is not applied to special situations in which it makes no sense.

satisfied that the agencies might properly consider avoiding its application by resort to the "absurd result" canon of statutory interpretation. *See, e.g., Public Citizen,* 491 U.S. at 455, 109 S.Ct. at 2567 ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or when it seems inconsistent with Congress' intention ...."); *id.* at 470, 109 S.Ct. at 2575 (Kennedy, J., concurring); *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 527, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring); *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981) ("The circumstances of the enactment of particular legislation may persuade a court that Congress did

not intend words of common meaning to have their literal effect."). Accordingly, a remand for reconsideration of the regulation under the statutory interpretation favored by Judge Luttig would necessarily permit the same general range of inquiry into likely congressional intent that is opened by our interpretation.

11. The statute omits any article before the word "class," but was apparently modeled on the Motor Carrier Safety Act of 1984, which authorizes waivers of safety regulations as to "*any* person or class of persons." 49 U.S.C.App. § 2505(f) (emphasis added). The parties agree that the article omission was inadvertent and that the provision should be read as written in text.

Waivers are not a device for deciding that a general rule makes no sense at all and should be scrapped altogether." Respondents' Brief, at 29. The issue, under this view, is not (as ATA would have it) whether the waiver provision extends to this particular statute. Surely it does. Presumably the Secretary could waive application of the pre-employment alcohol testing rule as to, say, motor carriers under a certain size or drivers over a certain age. The question, rather, is whether the agencies enjoy discretion to waive application of the 1991 Act—or of any other legislation—as to the entire universe of the intended objects of the particular statutory provision.

■ The agencies' contention that they do not reflects a highly defensible interpretation of the waiver provision and is entitled to deference. Commonly understood, administrative "waivers" are a mechanism "to seek out the 'public interest' in *particular, individualized* cases." *WAIT Radio v. F.C.C.,* 418 F.2d 1153, 1157 (D.C.Cir.1969) (emphasis added). They are not a device for repealing a general statutory directive. Accordingly, we uphold the agencies' determination that 49 U.S.C.App. § 2711 does not authorize them to waive motor carriers from the 1991 Act's pre-employment alcohol testing requirement, however they may construe that requirement on remand.

### III.

Because DOT and FHWA misinterpreted the Omnibus Transportation Employee Testing Act of 1991, we vacate the agencies' final rule insofar as it requires alcohol testing of all would-be motor carrier operators prior to their first performance of a safety-sensitive function. We remand for the agencies to reinterpret 47 U.S.C.App. § 2717(a) in the light of this opinion and then to promulgate final rules consistent with that reinterpretation.

### *VACATED AND REMANDED.*

LUTTIG, Circuit Judge, concurring in the judgment:

Like the majority, I would invalidate the Department of Transportation's alcohol testing rule. I would do so, however, not on the ground that the agency promulgated the rule on the basis of a mistaken interpretation of the Omnibus Transportation Employee Testing Act of 1991, but rather on the ground that the rule is an impermissible implementation of the plain language of the Act.

In that Act, Congress directed the Department to "establish a program which requires motor carriers to conduct preemployment . . . testing of the operators of commercial motor vehicles for use, in violation of law or Federal regulation, of alcohol or a controlled substance." 49 U.S.C.App. § 2717(a). I believe that, by its plain terms, the Act requires alcohol testing, either before hiring or before work actually begins, for use in violation of law. I find the Act neither "patent[ly] ambigu[ous]" nor "rife with ambiguity." *See ante* at 409–10.[1] I believe that the agency understood its directive from Congress precisely as I do. Neither ATA nor the agency contends that the agency construed the Act in the manner suggested by the majority. *See ante* at 409–10, 411 (ascribing to agency the interpretation that the Act "unambiguously requires *pre-hiring* alcohol testing of all applicants [for motor carrier positions] *without regard for* whether a positive test result would indicate *use in violation of law.*" (emphasis added)). Nor is there any record

---

1. Not only did Congress plainly require testing of persons for whom alcohol consumption might be illegal before they begin work, it was reasonable for it to have required such testing. Although at the time not necessarily focused on the illegality of the consumption, even the agency has conceded as much. As the Secretary of Transportation acknowledged, preemployment tests "may provide helpful information for use by a medical officer in determining whether an individual has a problem"; they may be "useful as one tool among many for an employer to determine whether an applicant can be expected to perform reliably in a safety-related function"; and they may be used "along with other indicators, as a warning signal about alcohol dependency." 54 Fed.Reg. 46,326, 46,337 (1989). In fact, because of the virtual certitude that Congress intended such testing for controlled substances, it would seem almost certain that Congress must be understood as having intended such testing for alcohol.

evidence that the agency so interpreted the Act.[2]

While I believe the Act is plain and the agency regarded it as such, I would nonetheless invalidate the alcohol testing rule because I believe that the rule is, and at the time of its promulgation was likely known by the agency to be, an invalid implementation of Congress' clear statutory directive. The only interpretations of the statutory term "preemployment" that in my view are defensible, as I note above, reference the period before hiring or the period before the employee actually begins work. The agency's definition of the term "preemployment," which includes the period after the employee begins work and up until the employee first undertakes a "safety sensitive" assignment, is irreconcilable with this plain meaning of the term.[3] This should be evident, if from nothing else, then from the fact that the statute already covers posthiring "preactivity" testing through its authorization of reasonable suspicion and random testing. That these tests may also be conducted during or after the particular activity has no relevance to the question of whether Congress has provided for preactivity testing by means of these tests.

The agency's sophistic argument that the rule is reasonable because the term "preemployment" is inherently ambiguous appears to be a *post hoc* effort to defend a rule that in retrospect appears indefensible, by bringing the authorizing statute within the class of legislative enactments to which *Chevron* deference must be accorded. The agency nowhere so much as hinted that the term "preemployment" might be ambiguous during the promulgation process, as the majority notes. And the authorities that the agency relies upon today for its claim belie any suggestion of perceived ambiguity. The agency can find no better authority for its assertion of ambiguity than a 50–year old case from the California Supreme Court; one federal statute which uses the term "employment," not "preemployment," and in which the "activity" meaning ascribed to that term is apparent only from the overall context in which the term appears; and an unspecified number of state workmen's compensation laws which also use only the term "employment," but which use it to mean the entire period during which one is in the employ of another, not the "activity" for which the person is hired. *See* Brief for Respondents at 21–22.

In my view, the agency finds itself in the precarious position it does, either because it mistakenly concluded that preemployment testing only of persons as to whom alcohol consumption would violate federal law would be literally impossible since there are no such persons, or, more likely, because it impermissibly concluded that the number of persons for whom this might be true would be so small as not to justify the effort that would be required to test them.

If the agency believed that no persons would be reached by a preemployment test for use in violation of law, it was simply wrong. Any number of federal statutes and regulations proscribe for employees of regulated industries, for government employees, and even for certain non-government employees, the consumption of alcohol at times when those persons might be tested by motor carriers in connection with the preemployment process. *See, e.g.,* 49 C.F.R.

---

2. The preamble to the final rule, the evidence that the majority relies upon for its conclusion, merely states the agency's understanding that "[t]he Act explicitly requires *pre-employment* testing for covered transportation industry employees, so we do not have the discretion to eliminate it from these programs." 59 Fed.Reg. 7321 (emphasis added). This statement says nothing about whether the agency believed the Act required "prehiring" testing or "prehiring" testing of all applicants "without regard for whether" their alcohol use might be in violation of law. It addresses only whether DOT has the discretion *not to issue preemployment alcohol testing rules at all*, not the timing of any tests that are ultimately administered. For this reason, contrary to the majority's belief, *ante* at 411, the preamble does not draw into question the agency's present contention that the term "preemployment" *is* ambiguous.

3. That the statute may be read to require testing either before hiring or before the employee begins work does not render the statute ambiguous as it concerns the issue before us, contrary to the majority's contention, *see ante* at 412 n. 9. The statute is plain in the only sense relevant, namely that it cannot be understood to authorize testing after one begins work.

§ 392.5(a) (prohibiting commercial motor vehicle operators from consuming an intoxicating beverage for the four hours before operating a commercial motor vehicle); 10 C.F.R. § 26.20(a) (prohibiting the consumption of alcohol by employees of Nuclear Regulatory Commission licensees "[w]ithin an abstinence period of at least 5 hours preceding any scheduled working tour"); 18 U.S.C. § 3563(b)(8) ("refrain[ing] from excessive use of alcohol" as a condition of probation); *cf.* 5 U.S.C. § 7352 (prohibiting habitual use of intoxicating beverages to excess by those employed in the competitive service).[4] Thus, contrary to the agency's belief, it was Congress, not the agency, that was correct in its assumption as to whether persons would be reached by such a test. *See, e.g.,* Brief for Respondents at 20.[5]

It is more likely, though, that the agency was aware of at least some of these specific proscriptions, but decided that testing for their violation would not be cost-effective. As the majority put it, the agency simply "[took] some liberties with the plain language of the Act for pragmatic ends." *Ante* at 411.

While the agency's representations come perilously close to the disingenuous, *see, e.g.,*

Brief for Respondents at 20 ("[T]he statute apparently directs the Secretary to require an impossibility."), the agency does not actually contend before us that there are no persons who could be tested preemployment for the consumption of alcohol in violation of federal law; rather, it only maintains that preemployment "use of alcohol is *typically* not in violation of law or Federal regulation," *see id.* at 19–20; *see also id.* at 23 ("'prehiring' tests *would almost never* be 'for violation of law or Federal regulation' and thus could *almost never* be done." (emphasis added)). Moreover, if the agency had believed that it was impossible to administer preemployment tests for use in violation of federal law, then presumably it would not have crafted a rule that permits such prehiring testing. The agency's decision to permit such testing, even though it doubted its usefulness, I take to be a telling admission that the agency recognized that prehiring testing for violations of federal law was possible, and, indeed, that such testing was necessary for the agency not to be in flagrant disregard of the statute Congress enacted.

The agency's contemporaneous acknowledgment that it promulgated this particular rule in order to make its alcohol testing program "more meaningful," 59 Fed.Reg.

4. *See also* 49 C.F.R. § 219.101(a) (prohibiting railroad employees from reporting for, or remaining on, duty while under the influence of alcohol); 14 C.F.R. § 91.17 (prohibiting airline crewmembers from working within eight hours after consuming alcohol or while having a blood alcohol concentration of .04 percent or more); 49 C.F.R. § 391.15 (prohibiting commercial motor vehicle operators from driving with a blood alcohol concentration of .04 percent or more); 32 C.F.R. § 552.152(b) (prohibiting alcohol use by military personnel and civilian employees of a particular military institution, while on duty).

Even a cursory review yields countless common-sense, every-day examples of how an individual seeking or awaiting employment as a motor carrier operator could be in violation of the above-cited laws and regulations at a time when the employer could meaningfully conduct a preemployment test for alcohol use in violation of federal law. The majority does not even attempt to explain or identify those laws or regulations as to which "the literal texts" would not proscribe alcohol consumption at such a time. *Ante* at 412–13 n. 10.

The majority resorts to mischaracterization of my position in an effort to minimize the class of individuals for whom testing would be required

under the plain meaning construction of the Act, so as to avail itself of the so-called "'absurd result' canon of statutory interpretation." *Id.* Contrary to the majority's assertion, I do not construe the term "preemployment testing" as limited to "prehiring testing." *Id.* As I explain, "preemployment" can refer not only to "prehiring," but also to the time after an individual is hired but before he begins work. The majority engages in further mischaracterization when it says that I believe the Act requires testing "of *all* applicants for illegal alcohol use." *Id.* (emphasis added). While testing of all applicants is one way to implement the statutory mandate, the agency is free to devise a more cost-effective alternative that requires less testing, as long as the program satisfies the statutory command.

In sum, it is apparent that the plain terms of the Act yield results that are entirely consistent with a reasonable assessment of congressional intent.

5. It follows from the fact that even prehiring testing for illegal alcohol consumption is possible that ATA's argument, that the agency could forego prehiring alcohol testing altogether, is similarly flawed, because this argument is premised on the understanding that such testing is impossible.

7321, likewise makes clear that the agency rejected the testing directed by Congress as less meaningful, if not meaningless, in achieving the purposes underlying the Act. The agency for years has been of the view that preemployment alcohol testing is neither wise policy nor cost-effective. *See, e.g.,* 54 Fed.Reg. 46,337 (1989); 57 Fed.Reg. 59,398 (1992); 59 Fed.Reg. 7321 (1994). Because Congress spoke as clearly as it did in section 2717(a) of the Omnibus Transportation Employee Testing Act, however, the agency was without authority to substitute its long-held view for Congress' on how best to effectuate the goal of protecting the public from alcohol and controlled substances abusers, even if the agency's chosen course would better serve those goals.[6]

Of course, the court, no less than the agency, is bound by the plain language of congressional enactments. It is for this reason that I cannot agree with the majority's intimation that any of the various interpretations of the Act it identifies could withstand scrutiny, including the one that we today invalidate. For example, I do not see how the plain language of the Act can be interpreted to require preactivity testing of all applicants. *See ante* at 411–12. I certainly do not see how the statute can be construed to require "pre-hiring testing of all applicants but only for use of controlled substances." *Id.* If nothing else, the statute requires preemployment testing for *both* controlled substances and alcohol.

I also disagree with the underlying jurisprudential message of the majority opinion that the plain meaning interpretation of the Act, which even the majority acknowledges is "linguistically sound," *ante* at 411, might not be sustainable because "it is far from clear how such a reading would really advance the Act's stated purpose of promoting 'commercial motor vehicle safety,'" *id.* at 411. When a statute is unambiguous, as this one is, I believe that we have no choice but to order it enforced as written, whether or not in our view it would, as so construed, sufficiently advance the underlying objectives. However tempting is the invitation to weigh the plain language against the overall purposes and legislative history of the Act, *id.* at 411–12, it is an invitation best declined.

---

**6.** It is at least arguable that the agency's rule does not further the purpose of detecting illegal alcohol use. By permitting testing any time prior to the first safety-sensitive assignment, the rule does not target uses that might be in violation of federal law. Except within the several hours immediately before the performance of a safety-sensitive function, drivers generally are not prohibited from consuming alcohol. 49 C.F.R. § 392.5(a). Thus, the agency's rule at once authorizes testing when consumption would not even be in violation of law and fails to require testing when it might actually detect illegal consumption.