Marc B. GOODMAN, Plaintiff–Appellant,

v.

PRAXAIR, INC.; Praxair Services, Inc., Defendants–Appellees.

No. 06–1009.

United States Court of Appeals, Fourth Circuit.

Argued: May 23, 2007.

Decided: July 25, 2007.

**ARGUED:** Thomas McCarthy, Jr., Thomas McCarthy, Sr. & Associates, P.C., Annapolis, Maryland, for Appellant. Howard Robert Rubin, Sonnenschein, Nath & Rosenthal, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Amy L. Bess, William E. Copley, Sonnenschein, Nath & Rosenthal, L.L.P., Washington, D.C., for Appellees.

Before WILLIAMS, Chief Judge, WILKINSON, NIEMEYER, MICHAEL, TRAXLER, KING, GREGORY, SHEDD, and DUNCAN, Circuit Judges, and WIDENER and WILKINS, Senior Circuit Judges.

Reversed and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Judges WILKINSON, MICHAEL, TRAXLER, KING, DUNCAN, and Senior Judges WIDENER and WILKINS joined. Chief Judge WILLIAMS wrote a separate opinion concurring in part, in which Judge SHEDD joined. Judge GREGORY wrote a separate opinion concurring in part.

Judge MOTZ, being disqualified, did not participate in this case.

## OPINION

NIEMEYER, Circuit Judge:

The district court dismissed plaintiff Marc Goodman's *amended* complaint for breach of contract against Praxair, Inc., and its wholly-owned subsidiary, Praxair Services, Inc., under Federal Rule of Civil Procedure 12(b)(6) because (1) the face of the amended complaint, which added Praxair Services, Inc., as a defendant, showed that the claim was barred by Maryland's three-year statute of limitations, and (2) Federal Rule of Civil Procedure 15(c) (providing when an amended pleading relates back to the date of the original pleading) did not save the complaint. In concluding that Rule 15(c) did not apply, the district court held (1) that the amended complaint *added* Praxair Services, Inc., as a party, rather than "changing the party," as required by Rule 15(c); (2) that Goodman's mistake in suing the parent, rather than its subsidiary, was not the type of mistake that justified the relation back of an amendment under Rule 15(c); and (3) that Praxair Services, Inc., might not have had notice that it would have been sued but for Goodman's mistake, as required by Rule 15(c)(3)(B).

Because we conclude that the district court erred both in applying the statute of limitations and in refusing to apply the relation back afforded by Rule 15(c), we reverse the judgment of dismissal and remand for further proceedings.

I

On December 18, 2003, Goodman commenced an action in Maryland state court, naming Praxair, Inc., as defendant and alleging, in two counts, that Praxair, Inc., breached a contract with Goodman and in doing so also violated the Maryland Wage Payment and Collection Act.

Goodman alleged in his complaint that he entered into a written contract, dated April 16, 1998, with Tracer Research Corporation, a manufacturer of tracing chemicals ("tracers") that detect fuel leaks in fuel tanks. Goodman alleged that the contract was for him to lobby on Tracer Research's behalf for exemptions of its

tracers from regulation by the Clean Air Act and the EPA regulatory scheme under it. The hoped-for exemptions would be based on the conclusion that tracers were not fuel additives, which were subject to expensive testing regulations. The contract provided for payments to Goodman based on the number of tracers that he was able to exempt from the EPA regulations. On December 19, 2000, allegedly as a result of Goodman's efforts, the EPA sent a letter to Tracer Research notifying it that 20 of its tracers "[were] not fuel additives" and therefore were exempt from environmental testing requirements. Goodman alleges that under the contract, Tracer Research then became obligated to pay him $650,000 in fees. Because Tracer Research paid Goodman $30,000 during the course of his efforts, Goodman alleged that Tracer Research still owed him $620,000.

Count I of the complaint for breach of contract demanded "[j]udgment as against Praxair, Inc. as successor in interest of Tracer Research Corp." in the amount of $620,000 in damages plus pre-judgment interest. Count II alleged that the fees payable under the contract were also properly characterized as wages and therefore payable by reason of the Maryland Wage Payment and Collection Act. As Goodman alleged, "The Defendant has owed the claimed wages in an amount equal to $620,000.00, since December 19, 2000, the date the EPA excluded the Defendant's tracers from the two-step EPA registration process."

Subsequent to the formation of the contract and its alleged breach, Tracer Research was acquired by UCISCO, Inc., a wholly-owned subsidiary of Praxair, Inc., and UCISCO thereafter changed its name to Praxair Services, Inc.

Counsel for Goodman stated by affidavit that after hearing that "Tracer Research Corp. had been sold to Praxair, Inc.," he visited the website of Praxair, Inc., during the course of preparing the complaint that he filed in state court. At the website, he found a press release dated November 11, 2002, in which Praxair, Inc., announced that "Praxair Acquires Tracer Research" and which provided the details that "UCISCO, Inc., a wholly-owned subsidiary of Praxair, Inc., has acquired Tracer Research corporation" and that "UCISCO had changed its name to Praxair Services, Inc." Counsel also determined that Praxair Services, Inc., was not registered to do business in Maryland but that Praxair, Inc., had been so registered.[1]

Purportedly based on the information learned, Goodman named Praxair, Inc., as the defendant and included the following allegations in the complaint:

> Defendant Praxair, Inc. is a corporation, and successor in interest to Tracer Research Corp., which was acquired in November, 2002 by Praxair Service, Inc. a wholly-owned subsidiary of Praxair, Inc.
>
> * * *
>
> To date, Defendant Tracer Research Corp., and its successor in interest, Praxair Services, a wholly-owned subsid-

1. In view of the representations by Praxair, Inc.'s counsel that UCISCO acquired the stock of Tracer Research pursuant to a "stock purchase agreement entered into in October 2002," the court questioned counsel for Praxair, Inc., during oral argument about whether Tracer Research Corporation remained a subsidiary of UCISCO (Praxair Services, Inc.) or whether it was dissolved as a corporation. Counsel represented that after the acquisition, Tracer Research Corporation merged into UCISCO (Praxair Services, Inc.). We proceed on the agreement of the parties that Praxair Services, Inc., was thus the proper defendant.

iary of Praxair, Inc., ... have failed and refused to pay the Plaintiff as agreed.

* * *

Wherefore, Plaintiff Marc B. Goodman demands the following relief:

a. Judgment as against Praxair, Inc. as successor in interest of Tracer Research Corp. in the amount of $620,000 plus pre-judgment interest at the legal rate.

Praxair removed the action to federal court based on diversity jurisdiction and then filed a motion to dismiss the complaint on the ground that Praxair Services, Inc., not Praxair, Inc., was the successor to Tracer Research's obligations under the contract with Goodman. In response, Goodman filed an amended complaint on April 5, 2004, in which he repeated the allegations contained in the original complaint but stated that Praxair Services, Inc., rather than Praxair, Inc., was liable under the contract. He also alleged that Praxair, Inc., should be liable on an alter ego theory, and amended the caption of the case to indicate that both Praxair, Inc., and Praxair Services, Inc., were defendants.

The defendants filed a motion to dismiss the amended complaint on various grounds, including the ground that the complaint on its face was time-barred and that Federal Rule of Civil Procedure 15(c) did not provide relation back of the amended complaint. The district court granted the motion to dismiss, finding that Goodman's claims "accrued" on December 19, 2000, the date of the EPA's letter to Tracer Research, and that therefore the amended complaint, which was filed on April 5, 2004, was outside of Maryland's three-year limitations period. The court also concluded that the relation-back provision of Rule 15(c) did not apply because the amended complaint did not "change" a party, as required by the Rule, but rather added a new party, and that adding a party when the plaintiff was fully aware of that party when he filed his original complaint was not the type of mistake envisioned by Rule 15(c) as suitable for relation back. The court gave as an additional reason that Goodman had not demonstrated that Praxair Services, Inc., "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it."

Goodman filed this appeal, arguing (1) that the running of Maryland's statute of limitations does not appear on the face of the complaint, and (2) that, in any case, Rule 15(c) causes the amended complaint to relate back to the date of the original complaint filed in state court, which concededly was filed within the limitations period.

## II

In concluding that the amended complaint itself alleged facts showing that its claims were barred by Maryland's three-year statute of limitations, the district court said:

> Plaintiff expressly stated in the First Amended Complaint that "the Defendant has owed the claimed wages in an amount equal to $620,000 since December 19, 2000." Thus, Plaintiff has unambiguously set forth *the date of accrual* of the claim(s) that he was asserting. There is no doubt that there is a three-year period of limitations. Accordingly, limitations expired December 19, 2003 on the claim(s) that Plaintiff presented in the instant case.

(Emphasis added).

Goodman argues that "the date that $620,000 became *owing* is *not* the same as an allegation of the date a contract cause of action *accrues*." He adds that in Mary-

land a cause of action accrues when a contract is *breached* and also when the plaintiff discovered or should have discovered the breach, if that date is later. He contends that neither the date of breach nor the day he discovered the breach is specified in the amended complaint and that therefore the amended complaint cannot be dismissed under Federal Rule of Civil Procedure 12(b)(6) on limitations grounds.

■ The parties agree that Maryland's statute of limitations applies, providing, "A civil action at law shall be filed within three years from the date it *accrues.*" Md.Code Ann., Cts. & Jud. Proc. § 5–101 (emphasis added). Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed.R.Civ.P. 8(c), and the burden of establishing the affirmative defense rests on the defendant. *See Newell v. Richards*, 323 Md. 717, 594 A.2d 1152, 1156 (1991); *accord Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 427 F.2d 862, 870 (4th Cir.1970). It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint.*" *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993) (emphasis added); *accord Desser v. Woods*, 266 Md. 696, 296 A.2d 586, 591 (1972).

■ Since the district court dismissed Goodman's amended complaint based on the affirmative defense that the complaint was barred by a statute of limitations, the question presented in this case is whether the amended complaint sets forth *on its face* the facts necessary to conclude that plaintiff's claims are barred by the statute of limitations.

The amended complaint alleges with respect to the timing of claims:

(1) that on December 19, 2000, the EPA "forwarded correspondence to" Tracer Research, stating that the EPA had concluded that Tracer Research's tracer chemicals were not fuel additives subject to regulation and therefore were exempt from the testing requirements;

(2) that as of December 19, 2000, $620,000 became due to the plaintiff under the contract; and

(3) that "to date, Defendant Tracer Research Corp., and its successor in interest, Praxair Services, Inc., a wholly-owned subsidiary of Praxair, Inc., have failed and refused to pay the Plaintiff as agreed."

The complaint also included a copy of the EPA letter dated December 19, 2000, addressed *to the CEO of Tracer Research Corporation.* That letter does not show that a copy was sent to Goodman.

The complaint alleges neither a date when the contract was breached nor a date when Goodman may have discovered the breach. Its allegation that money was owed does not mean that the contract on which it was owed had been breached. Indeed, the complaint does not even allege when Tracer Research received the letter or when it provided a copy to Goodman. Moreover, the complaint contains no allegations of when any demand for payment was made by Goodman nor of when Tracer Research refused to pay, if it did so explic-

itly. The complaint simply alleges that Tracer Research—at some unspecified point in time—"failed and refused to pay" Goodman.

 In Maryland, a cause of action for breach of contract generally accrues when the contract is breached. *Mayor & Council of Federalsburg v. Allied Contractors, Inc.,* 275 Md. 151, 338 A.2d 275, 280 (1975) ("In contract cases, the general rule is that the period of limitations begins to run from the date of the breach, for it is then that the cause of action accrues"). In this case, the breach consisted of Tracer Research's failure to pay the amounts agreed to. While Goodman did allege that the *conditions precedent* to Tracer Research's obligation to pay were fulfilled on December 19, 2000, when the EPA purportedly sent a letter to Tracer Research, Goodman did not allege that the breach occurred on that date. Furthermore, it is impossible to infer from the complaint the date when the breach occurred, since no date for payment was specified in the contract itself. In the absence of such a term, payment on a contract must be made within a commercially reasonable time. *See Kasten Constr. Co. v. Maple Ridge Constr. Co.,* 245 Md. 373, 226 A.2d 341, 345 (1967); *Ewell v. Landing,* 199 Md. 68, 85 A.2d 475, 477 (1952). Yet Goodman's complaint also does not allege when the commercially reasonable time expired in the circumstances of this case.

 Although the statute of limitations for breach of contract generally commences on the date of breach, for that is when the cause of action "accrues," that date may be extended in Maryland by the "discovery rule," which provides that the limitations period does not begin until the plaintiff learned or should have learned of the breach. As the Maryland Court of Appeals has explained:

The statute of limitations on [the plaintiffs'] contract claim began to run when the cause of action for breach of contract accrued. Under the principles set forth in our cases, the cause of action accrued when [the defendant] breached its contract ... and when the breach was or should have been discovered.... Since the discovery rule is now generally applicable in civil actions, accrual of the cause of action was postponed until [the plaintiffs] knew or should have known of the breach.

*Jones v. Hyatt Ins. Agency, Inc.,* 356 Md. 639, 741 A.2d 1099, 1103–04 (1999); *see also Bragunier Masonry Contractors, Inc. v. The Catholic Univ. of America,* 368 Md. 608, 796 A.2d 744, 755–56 (2002) (same).

Goodman's complaint also does not provide facts sufficient to apply the discovery rule. This is particularly important in this case in view of the fact that the district court concluded that the breach of contract claim accrued when the EPA sent its letter *to Tracer Research,* not to Goodman. The district court did not address either when Tracer Research received the letter or when Goodman received it or when a commercially reasonable time for payment had elapsed.

The Praxair defendants argue that because the discovery rule is an extension of the limitations period that Goodman must allege and prove in response to a statute of limitations defense, the risk of failing to make the showing must fall on Goodman, not on the Praxair defendants. *See Shah v. HealthPlus, Inc.,* 116 Md.App. 327, 696 A.2d 473, 478 (1997). The problem with this argument, however, is that the discovery rule itself is dependent upon the existence of a date of breach. While Goodman might ultimately have to *prove* when he discovered a breach, he was not obligated to plead discovery of the breach in his complaint when the affirmative defense

had yet to be demonstrated in the complaint or asserted by the defendants. If the defendants wished to dispose of the complaint on its face *before* asserting their affirmative defense, on the ground that their affirmative defense was evident in the complaint, they had to show also that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint. "[O]nce a claim has been stated adequately, it may be supported by showing *any set of facts* consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, — U.S. ——, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) (emphasis added). To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised. Of course, no such pleading is required except, perhaps, in the unusual case where a claim is filed *clearly* beyond the applicable limitations period and the plaintiff seeks to forestall its dismissal by alleging the facts of discovery.

In sum, the most that can be derived from Goodman's complaint is that the conditions precedent to Tracer Research's obligations to pay Goodman were satisfied as of December 19, 2000. But there are no allegations sufficient to determine when the obligation to pay arose or when Tracer Research could be deemed to have refused to make payment. The most the complaint says is that at some unspecified time after December 19, 2000, Tracer Research "failed and refused" to pay, breaching the contract. Accordingly, we conclude that the face of the complaint does not allege facts sufficiently clear to conclude that the statute of limitations had run, and the district court therefore erred in dismissing the complaint on that basis under Rule 12(b)(6).

## III

■ Because the district court ruled that Goodman's amended complaint, filed on April 5, 2004, was barred by Maryland's three-year statute of limitations, it also decided whether the amended complaint was saved by the relation-back facility of Rule 15(c). Even though we have reversed the district court's ruling that the Praxair defendants' limitations defense may be decided from the face of the complaint, our ruling nonetheless does not foreclose a later finding by the district court that Goodman's claim accrued more than three years before he filed his amended complaint. Accordingly, we also address whether the amended complaint is saved by the relation-back authorized by Rule 15(c). Relation back would give the amended complaint the filing date of the original complaint, which the parties agree was timely filed.[2]

---

2. In her concurring opinion, Judge Williams has stated that she would not reach the relation-back issue because it is unnecessary to the resolution of the appeal and is issued solely to provide guidance.

First, our court regularly issues opinions to provide guidance on remand in the interest of judicial efficiency. *See United States v. Barile*, 286 F.3d 749, 759 (4th Cir.2002) (Williams, J.) ("Whether the excluded portion of Sheridan's testimony is admissible absent the district court's Rule 16 sanction is an issue that may arise again should a new trial be required on remand, and we therefore address it here"); *Resolution Trust Corp. v. Allen*, 16 F.3d 568, 573–74 (4th Cir.1994) (Williams, J.) ("Although remand for the district court to address these arguments would be the normal course, we believe it would be a fruitless exercise here. The parties have thoroughly briefed the [ ] issue before us.... Therefore, in the interest of judicial economy ... we will proceed to address the merits"). *Accord Willingham v. Crooke*, 412 F.3d 553, 561 (4th Cir.2005); *United States v. Ebersole*, 411 F.3d 517, 535 (4th Cir.2005); *United States v. Ruh-*

■ The applicable portions of Rule 15(c) provide:

An amendment of a pleading relates back to the date of the original pleading when

\* \* \*

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and ... the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(2), (3). Thus, in the circumstances presented here, an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading if (1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in by the amendment received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant "but for a mistake concerning the identity of the proper party."

■ These requirements of Rule 15(c) reflect a subtle and complex compromise of two competing policies: *On the one hand*, the Federal Rules favor simplicity in pleadings, *see* Fed.R.Civ.P. 8(a), and their liberal amendment, *see* Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), as well as the administration of cases to secure their just determination, *see* Fed.R.Civ.P. 1. *On the other hand*, statutes of limitations are legislative determinations that give defendants predictable repose from claims after the passage of a specified time, and courts must, in recognition of the separation of

bayan, 406 F.3d 292, 302 (4th Cir.2005); *Studio Frames, Ltd. v. Standard Fire Ins. Co.*, 369 F.3d 376, 383 (4th Cir.2004); *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 194 (4th Cir.2003); *Knussman v. Maryland*, 272 F.3d 625, 642 n. 13 (4th Cir.2001); *United States v. Dickerson*, 114 F.3d 464, 468 (4th Cir.1997); *Am. Trucking Ass'ns, Inc. v. Fed. Highway Admin.*, 51 F.3d 405, 409 (4th Cir.1995); *Klugh v. United States*, 818 F.2d 294, 299 (4th Cir.1987).

But in this case the relation-back issue is a viable dispute that has been presented to us and is much more than something to be decided as a matter of guidance. We resolve the limitations issue only as a pleading matter, holding that a Rule 12(b)(6) motion to dismiss cannot in this case dispose of the limitations issue. We do not dispose of the limitations question on the merits, as that requires further proceedings. We decide the relation-back issue because the district court's

holding on that issue is broader than the limitations issue and would, if left intact, result in an erroneous judgment if the further proceedings revealed that the amended complaint was filed outside of the limitations period. Moreover, the district court decided both issues, and both issues were appealed to us. Not deciding the relation-back issue now would leave in place an erroneous decision regardless of how the limitations issue turned out.

In addition, counsel for the parties assured the court of the viability of both issues, representing to the court at oral argument that counsel for the Praxair defendants in fact had transmitted a letter to Goodman, refusing his demand more than three years before the amended complaint was filed. Once that letter is filed with the district court, we would have to address the relation-back issue in a second appeal back-to-back with this appeal.

powers, hesitate to extend or ignore them for judicially created reasons. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 797 (4th Cir.2001). In light of these policies, Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served. *See* 3 James Wm. Moore, et al., *Moore's Federal Practice* § 15.19[3][a] (3d ed. 1997) ("The purpose of Rule 15(c) is to provide the opportunity for a claim to be tried on its merits, rather than being dismissed on procedural technicalities, when the policy behind the statute of limitations has been addressed"). And that is accomplished in Rule 15(c) by requiring that a new party have had adequate notice within the limitations period and by assuring that the new party not be prejudiced by the passage of time between the original pleading and the amended pleading.

In denying relation-back under Rule 15(c) in this case, the district court ruled (1) that the amended complaint did not "*change* the party or the naming of the party against whom the claim [was] asserted," but rather *added* Praxair Services, Inc.; (2) that Goodman "was fully aware of the existence of [Praxair Services, Inc.] and its correct name," and therefore his mistake in naming only Praxair, Inc., in the original complaint was not the type of mistake on which Rule 15(c)(3) acts; and (3) that it was doubtful that Praxair Services, Inc., "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been properly brought against it," as required by Rule 15(c)(3)(B), because there was "no mistake to the existence, name and relevant action taken by [Praxair Services, Inc.]." Goodman contends that the district court erred in all three of its rulings—contentions that we now address.

A

■ Goodman argues that by adding Praxair Services, Inc., as a defendant to the amended complaint, he "changed" the party he was suing, as required by Rule 15(c)(3), because "an *addition* to something is generally regarded as a *change* to that thing." *See Lundy v. Adamar of N.J., Inc.,* 34 F.3d 1173, 1192–93 & n. 13 (3d Cir.1994) (citing cases); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1498 (2d ed. 1990) ("The word 'changing' has been liberally construed by the courts, so that amendments simply adding or dropping parties, as well as amendments that actually substitute defendants, fall within the ambit of the rule").

The Praxair defendants argue that "the language of Rule 15(c)(3) makes clear that it requires change of an existing party—not merely a change in the overall composition of the parties collectively." Thus, as they reason, the Rule applies only to an amendment where a party is substituted for another, not added to the complaint. *See Wilson v. United States,* 23 F.3d 559, 563 (1st Cir.1994); *Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir.1993); *In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1450 (6th Cir.1991).

Although we adopt Goodman's position as the better interpretation of Rule 15(c), even if we were to accept the Praxair defendants' interpretation, it still appears that the amended complaint *substituted* the party against whom the breach of contract claim was asserted. The contract claim was originally asserted against Praxair, Inc., but in the amended complaint it is asserted against Praxair Services, Inc. While Praxair, Inc., did remain a defendant in the amended complaint, it was

named a defendant under a new theory of liability. This fact, however, is irrelevant to the relation-back inquiry as to the amended breach of contract claim now asserted against Praxair Services, Inc.

Moreover, we can discern no policy that would be served by the Praxair defendants' restrictive reading of "changes," which would force the amending party to drop a defendant for each defendant he adds. Praxair, Inc., was placed on notice within the limitations period of the claims relating to the transactions alleged in the original complaint, and no unfairness to it resulted from leaving it in as a defendant in the amended complaint. Any unfairness caused by the amendment could only be claimed by Praxair Services, Inc., the new party. But the protections for Praxair Services are addressed by considering the requirements of Rule 15(c)(3)(A) and (B), not from reading the term "changes" narrowly. Because no limitations policy is at stake in the interpretation of "changes," the liberal amendment policy of the federal rules becomes paramount. *See* 6A Charles Alan Wright, et al. § 1498 ("If both the basic transaction test and the notice requirement of Rule 15(c) are satisfied, there is no justification for a restrictive interpretation of the word 'changing' that would require a plaintiff to choose among defendants"). In the present circumstances, we conclude that the amended complaint "change [d] the party or the naming of the party against whom a claim is asserted," as required by Rule 15(c)(3).

### B

The district court also concluded that Goodman's naming of Praxair Services, Inc., in the amended complaint when Goodman had named only Praxair, Inc., in the original complaint, corrected a mistake that was not covered by Rule 15(c) because Goodman was always aware of the existence of Praxair Services, Inc., and its correct name. As the court observed, Goodman "mistakenly thought that [Praxair, Inc.] became the (or perhaps a) successor in interest to [Tracer Research Corporation]. Rule 15(c) does not allow relation back to correct this type of mistake."

The Praxair defendants have developed this position further, arguing that when a plaintiff fully intends to name the original defendant and it turns out that the plaintiff named the wrong party, no "mistake" as anticipated by Rule 15(c)(3) has been made. To allow the correction of a mistake to relate back, the mistake, they argue, must be a mistake of corporate identity or a misnomer, not one based on a lack of knowledge or poor strategy. In making this argument, the Praxair defendants rely on our decisions in *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196 (4th Cir.1989), and *Locklear v. Bergman & Beving AB*, 457 F.3d 363 (4th Cir.2006).

The interpretation of Rule 15(c) made by the district court and now urged by the Praxair defendants focuses unnecessarily on the type of mistake without addressing the notice and prejudice to the new party.

Rule 15 implements the notions that a plaintiff may amend a pleading for whatever reason and that his amendment should be freely allowed. Consistent with this policy, Rule 15(c)(3) articulates an instance when an amendment relates back, referring simply to when an amendment "changes the party or the naming of the party" *for whatever reason*. The Rule does not concern itself with the amending party's particular state of mind except insofar as he made a mistake; it presumes that the amending party can make the amendment, although it does constrain substantially the type of amendment that may relate back—one that changes a party or the naming of a party with respect to a

claim already asserted. The Rule's description of when such an amendment relates back to the original pleading focuses on the *notice to the new party* and *the effect on the new party* that the amendment will have. *See* Fed.R.Civ.P. 15(c)(3)(A)-(B). These core requirements preserve for the new party the protections of a statute of limitations. They assure that the new party had adequate notice *within the limitations period* and was not prejudiced by being added to the litigation. Stated in the specifics of the Rule, an amendment relates back only when it changes a party or the naming of a party, *see* Fed.R.Civ.P. 15(c)(3); when it arises out of the same transaction as that referred to in the original complaint, *see* Fed.R.Civ.P. 15(c)(2), (3); when it causes no prejudice to the new defendant in maintaining his defense, *see* Fed.R.Civ.P. 15(c)(3)(A); and when the new defendant should have known that it was the party that would have been sued but for a "mistake," Fed.R.Civ.P. 15(c)(3)(B). Thus, reference to "mistake" in Rule 15(c)(3)(B), while alluding by implication to a circumstance where the plaintiff makes a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged, explicitly describes the *type of notice or understanding* that the *new party* had. This construction serves the policies of freely allowing amendment and at the same time preserving to new parties the protections afforded by statutes of limitations.

Unfortunately, the "but for a mistake" language in Rule 15(c)(3)(B) has led to differing interpretations by the courts. Some have divided cases involving amendments to correct *typographical errors* from cases involving amendments to correct a *lack of knowledge* of the proper party, and have created another category of amendments resulting from *strategic er-*ror. *See, e.g., Wilson,* 23 F.3d at 563 (denying relation-back when injured seaman sued employer, rather than owner of vessel, because seaman lacked knowledge of proper party); *Rendall–Speranza v. Nassim,* 107 F.3d 913, 919 (D.C.Cir.1997) (denying relation-back when employee elected to sue supervisor for sexual harassment, then tried to add employer). Moreover, the majority of courts agree that Rule 15(c)(3) does not permit substitution for "Doe" defendants after the limitations period has run. *See, e.g., Wayne v. Jarvis,* 197 F.3d 1098, 1103–04 (11th Cir.1999); *Jacobsen v. Osborne,* 133 F.3d 315, 321 (5th Cir.1998); *Baskin v. City of Des Plaines,* 138 F.3d 701, 704 (7th Cir.1998); *see also Locklear,* 457 F.3d at 367. In denying substitutions of new defendants for "Doe" defendants, some courts base their analysis on the Rule's "mistake" language. *See Wood v. Worachek,* 618 F.2d 1225, 1230 (7th Cir.1980) ("Rule 15(c)(2) permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party").

Despite the good-sense results effected by some of these holdings, the text of Rule 15(c)(3) does not support their parsing of the "mistake" language. *See Arthur v. Maersk, Inc.,* 434 F.3d 196, 208 (3d Cir. 2006) ("Although a majority of courts have held that only a 'misnomer or misidentification' of an existing party can constitute a 'mistake concerning the identity of the proper party' under Rule 15(c) ... there is no linguistic basis for this distinction"); *accord Leonard v. Parry,* 219 F.3d 25, 29 (1st Cir.2000) ("the language of Rule 15(c)(3) does not distinguish among types of mistakes concerning identity"). Most of

the cases could have reached the same result simply by addressing the stated requirements of the Rule.

Thus, for example, substitutions for "Doe" defendants after limitations have run would be barred by the two separately stated requirements of Rule 15(c)(3) that focus *on the new party.* Rule 15(c)(3)(A) requires that the change not prejudice the party being substituted for Doe, and Rule 15(c)(3)(B) requires that the new party knew or should have known within the limitations period that but for a mistake, it would have been a party. Most parties substituted for "Doe" defendants would be protected against being added either because they were prejudiced or because they did not have proper notice. Moreover, while parsing among different kinds of mistakes does not typically aid application of the Rule, naming Doe defendants self-evidently is no "mistake" such that the Doe substitute has received proper notice.

The "mistake" language is textually limited to describing the notice that the new party had, requiring that the new party have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place, although it also implies that the plaintiff in fact made a mistake. No policy supports permitting relation-back for typographical mistakes, but not for oversights or mistakes of inclusion or omission. The policy considerations of Rule 15(c) concern whether the repose granted by statutes of limitations is preserved for parties named in amended pleadings. And that depends on the notice to and effect on the new party. The limitations of Rule 15(c)(3) thus only apply when the policies underlying limitations rules may be trampled. As Justice Holmes explained:

> Of course an argument can be made on the other side, but *when a defendant has had notice from the beginning* that the plaintiff sets up and is trying to

enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied.

*New York Cent. & Hudson River R.R. v. Kinney,* 260 U.S. 340, 346, 43 S.Ct. 122, 67 L.Ed. 294 (1922) (emphasis added); *see also* Rebecca S. Engrav, *Relation Back of Amendments Naming Previously Unnamed Defendants Under Federal Rule of Civil Procedure 15(c),* 89 Calif. L.Rev. 1549, 1573–78 (2001) (advocating liberal construction of "mistake" language in Rule 15(c)(3)).

 At bottom, the inquiry, when determining whether an amendment relates back looks at whether the plaintiff made a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged, and it looks into whether the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation. When that party has been given fair notice of a claim *within the limitations period* and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back.

> A few cases tend to suggest that if plaintiff's own inexcusable neglect was responsible for the failure to name the correct party, an amendment substituting the proper party will not be allowed, notwithstanding adequate notice to the new party. Although this factor is germane to the question of permitting an amendment, it is more closely related to the trial court's exercise of discretion under Rule 15(a) whether to allow the change than it is to the satisfaction of the notice requirements of Rule 15(c).

6A Charles Alan Wright, et al. § 1498.

Some language in our cases is concededly less than clear on this point of law. *See*

*Western Contracting,* 885 F.2d at 1201 ("Nothing in Bechtel's answers suggested a claim of fraud or that the individual counter-defendants had been omitted from such a claim by mistake. Indeed, Bechtel has not alleged such a mistake"); *Locklear,* 457 F.3d at 366 ("Locklear's substitution ... does not, for several reasons, qualify as a mistake under Rule 15(c)(3)(B)"). The facts of those cases, however, demonstrate that we used the "mistake" language as a shorthand term to hold that the party to be added must have known of the mistake. Thus, we concluded in both cases that the party seeking amendment outside of the limitations period had originally pleaded in such a way that the new party to be added *could not reasonably have known* that it should have been named originally.

In *Western Contracting,* the plaintiff corporation brought suit for breach of contract. The defendant counterclaimed on the basis that the contract had been procured by fraud. Later, the defendant sought to amend the counterclaim to add new claims against individual employees of the plaintiff corporation, asserting that they were responsible for the fraud. We held that the new claims did not relate back under Rule 15(c)(3) because the new counterclaim defendants were not chargeable, within the limitations period, with knowledge that they should have been parties to the original counterclaim but for a mistake. 885 F.2d at 1201. Because the counterclaim complaint set out claims only *against the corporation,* without mention of the individual employees responsible, the individual employees had no reasonable notice that they should also have been parties. Thus, the amendment in *Western Contracting* failed the notice requirement of Rule 15(c)(3)(B).

Similarly, in *Locklear,* the original complaint in a products liability action named the town where the offending machine was constructed, rather than the manufacturer. We held that the manufacturer was not chargeable within the limitations period with knowledge that it should have originally been named a defendant. It was readily apparent in that case that the naming of the town rather than the manufacturer was a "mistake," but the later-added manufacturer was not put on notice of the claim within the limitations period in that it should have known it would have been named but for the mistake. *See Locklear,* 457 F.3d at 366. Accordingly, we *limited* our holding to the conclusion that the machine manufacturer did not have the knowledge required by Rule 15(c)(3)(B). *See id.* ("We therefore focus our attention *solely* on the application of Rule 15(c)(3)'s remaining requirements to *Locklear's* amended complaint, beginning with the requirement[Rule 15(c)(3)(B)] that [the machine manufacturer] 'knew or should have known that, but for a mistake concerning' their identity, the action would have been brought against [it]") (emphasis added).

■■■■ These holdings, as so read, comport well with the policies underlying Rule 15(c)(3), and we reject any reading of them that might be taken as conflicting with our holding today. To the extent that there is a conflict in holding, this opinion controls. *See United States v. Lancaster,* 96 F.3d 734, 742 (4th Cir.1996). Thus, when a person would reasonably believe that the time for filing suit had expired, without having been given notice that it should have been named in an existing action, that person is entitled to repose. *See* Fed.R.Civ.P. 15(c)(3)(B). On the other hand, when a person is provided notice within the applicable limitations period that he would have been named in the timely filed action but for a mistake, the good fortune of a mistake should not save him. *Id.* This is not to say that a plaintiff

may name any party within the limitations period with the hope of amending later, perhaps after discovery. Rather, it is to say that the "mistake" language is not the vehicle to address those concerns. In the cases of concern, most notably the cases of "Doe" substitutions, the notice and prejudice requirements of Rule 15(c)(3)(A) and (B) adequately police this strategic joinder practice. The Rule's emphasis on notice, rather than on the type of "mistake" that has occurred, saves the courts not only from an unguided and therefore undisciplined sifting of reasons for an amendment but also from prejudicing would-be defendants who rightfully have come to rely on the statute of limitations for repose. The disagreement among courts over which mistakes are forgiven under Rule 15(c) and which mistakes result in dismissal illustrates the peril of the approach.

The mandate remains that a plaintiff has the burden of locating and suing the proper defendant within the applicable limitations period. The Federal Rules do not demand a perfect effort at the outset, but they do demand that when an amendment seeks to correct an imperfect effort by changing parties, the new party must have received adequate notice within the limitations period and suffer no prejudice in its defense.

## C

Praxair Services, Inc., asserts, as the district court concluded, that it was not provided fair notice by the original complaint as required by Rule 15(c)(3)(A) and (B). It argues that "it did not know, nor should it have known that it was the intended target of Goodman's initial claim." It maintains that because the complaint accurately described the relationships between Tracer Research Corporation, Praxair Services, Inc., and Praxair, Inc., it could fairly assume that the caption of Goodman's original complaint accurately reflected whom he wanted to sue.

The original complaint described the contract between Goodman and Tracer Research Corporation and alleged that Tracer Research breached it. Seeking to redress the breach, the complaint sought to trace liability from Tracer Research to the appropriate successor. The complaint stated that "[t]o date, Defendant Tracer Research Corp., and *its successor in interest,* Praxair Services, a wholly owned subsidiary of Praxair, Inc., . . . have failed and refused to pay the Plaintiff as agreed." For relief, the complaint demanded "Judgment as against Praxair, Inc. as *successor in interest* of Tracer Research Corp."

██ Explaining the circumstances of these assertions, the complaint described the events leading up to the breach of contract, the parties, the transactions between Praxair, Inc., and Tracer Research Corporation, and the facts attendant to the litigation. Praxair Services' current assertion of ignorance is simply implausible for several reasons. *First,* the complaint made conceptually clear that it was suing the corporate entity that was the successor of Tracer Research Corporation. Praxair, Inc., and Praxair Services, Inc., knew, better than anyone, which corporate entity that was, having acquired Tracer Research and participated in the structuring of the transaction in the first place.

*Second,* the complaint described the nature of the contract and the original parties to it. Any corporation maintaining reasonable business records would be able rapidly to route the complaint to the appropriate subsidiary responsible for that contract.

*Third,* Praxair, Inc., and Praxair Services, Inc., are parent and subsidiary, respectively, and have employed the same attorneys. Their identity of interest elimi-

nates any worry that Praxair Services was caught by surprise when the complaint was amended. "Notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has ... a sufficient identity of interest with the original defendant...." *Western Contracting*, 885 F.2d at 1201; *see also* 6A Charles Alan Wright, et al. § 1499 ("An identity of interest has been found between a parent and a wholly owned subsidiary, as well as between related corporations whose officers, directors, or shareholders are substantially identical and who may have similar names or conduct their business from the same offices").

Thus, what is clear is (1) that Goodman intended to sue the *successor* of Tracer Research for breach of his contract with Tracer Research; (2) that Praxair Services, Inc., became the successor of Tracer Research; (3) that Goodman named Praxair, Inc., in its original complaint for breach of his contract with Tracer Research; and (4) that Praxair Services, Inc., knew that but for Goodman's mistake in pleading, Praxair Services, Inc., would have been sued for breach of his contract with Tracer Research. Goodman's mistake therefore represents the difference between his manifested intent to sue the successor to Tracer Research and the defendant whom he actually named in the complaint.

The reason for Goodman's mistake, while irrelevant to whether Praxair Services, Inc., had adequate notice, is nonetheless puzzling in view of the complaint's allegations. In one place, the complaint states, ambiguously, "Defendant Praxair, Inc. is a corporation, and successor in interest to Tracer Research Corp., which was acquired in November 2002 by Praxair Service[s], Inc. a wholly owned subsidiary of Praxair, Inc." Yet in another place in the same complaint, Goodman alleges, "To

date, Defendant Tracer Research Corp., and its successor in interest, Praxair Services, a wholly owned subsidiary of Praxair, Inc., ... have failed and refused to pay the Plaintiff as agreed." Finally, in his prayer for relief, Goodman demands judgment against "Praxair, Inc. as successor in interest of Tracer Research Corp." These apparent inconsistencies need not be reconciled except to conclude that Praxair Services, Inc., was put on notice that Goodman had made a mistake in pleading because, incontrovertibly, he intended to name as defendant the successor in interest to Tracer Research, and Praxair Services, Inc., knew who that was.

In addition to the complaint's facial expression of intent to sue the successor in interest, we may also impute that knowledge to Praxair Services, Inc., because both Praxair Services, Inc., and Praxair, Inc., were closely related business entities represented by the same lawyers. The history of Rule 15(c)(3) informs the significance of these circumstances. The central concern when the current Rule 15(c)(3) was added was the misnaming of government instrumentalities. "The problem has arisen most acutely in certain actions by private parties against officers or agencies of the United States." Fed.R.Civ.P. 15 advisory committee's note (1966 amendment). The relationships of corporate entities under a single umbrella are analogous to the relationships among various agencies of the United States government. Though the advisory committee's note does not outline the precise amount of latitude for improper naming of government entities, it clearly contemplated a liberal approach, suggesting reversal of several earlier cases taking a hardline approach to amendments. *Id.* The Rule itself states that service of process on the United States Attorney satisfies the notice requirement with regard to any United States agency or officer. Similarly, if we

are to take the Rule as addressing the same problem in the private sector, we can conclude that when a plaintiff alleges a comprehensible claim against one of a group of closely related and functioning business entities or corporations, the other entities in that group, barring a contrary showing, will be charged with knowledge under Rule 15(c)(3)(B) of the entity properly answerable to the claim. In the circumstances of this case, Praxair Services, Inc., as a subsidiary of Praxair, Inc., represented by the same attorneys, is accordingly imputed with knowledge of Goodman's claim against it and of the facts giving rise to that suit when the original complaint was served. Indeed, it concedes it had notice but thought, it asserts, that Goodman intended to sue Praxair, Inc., and not Praxair Services, Inc.

We conclude that Praxair Services, Inc., knew that it was the successor to Tracer Research Corporation's contractual liability and therefore it knew or should have known within the limitations period that it was the proper party to Goodman's suit. Since Praxair Services, Inc., has conceded that it has suffered no prejudice to its defense of Goodman's claim, we conclude that the requirements for relation-back under Rule 15(c)(3) have been met.

The judgment of the district court is reversed, and the case is remanded for further proceedings.

*REVERSED AND REMANDED*

WILLIAMS, Chief Judge, concurring in part:

I join only in Parts I and II of Judge Niemeyer's opinion. Because it does not "clearly appear[ ] on the face of the complaint" that the statute of limitations period had expired, the district court erred in dismissing the complaint under Fed. R.Civ.P. 12(b)(6). *Richmond, Fredericks-*

*burg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993).

Having determined that the district court erred in ruling, based on the complaint alone, that the statute of limitations had expired, I, with respect to my colleagues, believe that we should remand this case for discovery so that the district court may determine when, in fact, the statute of limitations period expired. Instead, the majority of my good colleagues have decided that we should address relation-back under Rule 15(c) of the Federal Rules of Civil Procedure because the district court *could "later find[ ]," ante* at 466 (emphasis added), that the statute of limitations period expired before Goodman filed his amended complaint. They have decided to proceed with the inquiry even though we do not know the one fact necessary to address the relation-back issue, that is, whether the amended complaint was in fact filed outside the three-year statute of limitations period. The majority thus reaches the relation-back issue only by hypothesizing that the statute of limitations has expired. I believe this approach is unusual and contrary to Article III of the Constitution as articulated by the Supreme Court's and this circuit's precedent. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (instructing that federal courts are not to give "opinion[s] advising what the law would be upon a hypothetical state of facts"); *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 242, 244, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (holding that federal "judicial power does not extend to abstract questions" and the dispute in a particular case "must not be nebulous or contingent but must have taken on fixed and final shape" (internal quotation marks and alterations omitted)); *Fobian v. Storage Tech. Corp.,* 164 F.3d 887, 891 (4th Cir. 1999) (stating that "[i]ndisputably . . . federal courts . . . are prohibited from issuing

opinions advising what the law would be upon a hypothetical state of facts" (internal quotation marks and alternations omitted)). Therefore, we should decline to address the Rule 15(c)(3) issue.

The parties want us to address the Rule 15 issue solely to provide guidance to the district court on remand; they admitted as much at argument.[1] The majority grants them this wish; I would not. *Cf. Calderon v. Ashmus,* 523 U.S. 740, 747, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) (disallowing a party from using the Declaratory Judgment Act "to gain a litigation advantage by obtaining an advance ruling on an affirmative defense").

Finally, apart from the hypothetical factual underpinning for the majority's opinion on Rule 15(c)(3), I believe that we should not address the relation-back issue because it is also unnecessary to the resolution of this appeal. *See Banks v. Dretke,* 540 U.S. 668, 689 n. 10, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (declining to address a habeas petitioner's alternative grounds for relief because it was "unnecessary" in view of the court's grant of the petition on other grounds). For that reason, we should adhere to the "cardinal principal of judicial restraint," that "if it is not necessary to decide more, it is necessary not to decide more."[2] *PDK Labs., Inc., v. Drug Enforcement Admin.,* 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in the judgment). For these reasons, I concur only in Parts I and II of the majority opinion and concur in the judgment.

Judge Shedd has authorized me to indicate that he joins in this opinion.

GREGORY, Circuit Judge, concurring in part:

I, too, join only Parts I and II of Judge Niemeyer's opinion. I agree that the district court could not, from the face of Goodman's complaint, determine when the statute-of-limitations period expired. It could not, therefore, dismiss the complaint for being filed outside the limitations period. *See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993). I concur only in part because I agree with Judge Williams that we should not reach the relation-back question. Judicial economy ought not to trump the ordinary rule that a court should decide only that which is necessary to settle the immediate dispute between the parties before it. I consider Part III, which is necessary to neither the reasoning of Part II nor the resolution of Goodman's appeal, to be dicta. Even if I felt it proper to decide the relation-back question today, however, I could not join Part III of the majority's opinion.

---

1. Contrary to the majority opinion's attempt to suggest otherwise, this opinion is not inconsistent with the opinions I wrote for the court in *United States v. Barile,* 286 F.3d 749 (4th Cir.2002), and *Resolution Trust Corp. v. Allen,* 16 F.3d 568 (4th Cir.1994). Those cases, unlike the majority's opinion in this case, did not render legal judgments based on hypothetical facts.

2. The majority opinion claims that "the relation-back issue ... is much more than something to be decided as a matter of guidance" because "[n]ot deciding the relation-back issue now would leave in place an erroneous decision." *Ante* at 466–67 n. 2. I beg to differ. Because the district court's dismissal of this case was in error, we must vacate that order, leaving no decision that could operate as law of the case.

Furthermore, although the majority opinion asserts that the parties have agreed that relation-back issue will necessarily be in play on remand, the opinion points to nothing in the record or briefs to back up this assertion. And if it could, then Part II of the majority opinion is unnecessary.

Despite its claims to be consistent with our Rule 15(c) precedent, the majority opinion changes the law of our circuit substantially. Although the majority and the other circuits that agree with it are correct that the language of Rule 15(c)(3) does not distinguish among types of mistakes concerning identity, this Court has done so until now. In *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir.1989), we expressly adopted the Seventh Circuit's interpretation of *mistake* as it is used in Rule 15(c)(3). That court differentiates between mistakes involving "misnomer" and mistakes involving "lack of knowledge concerning the proper party." *See Eison v. McCoy*, 146 F.3d 468, 471–72 (7th Cir.1998); *Wood v. Worachek*, 618 F.2d 1225, 1229–30 (7th Cir.1980) (describing a misnomer situation as one in which "the proper defendant is already before the court and the effect [of the amendment] is merely to correct the name under which he is being sued").* We have done the same.

In *Locklear v. Bergman & Beving AB*, 457 F.3d 363, 366 (4th Cir.2006), we drew a clear distinction between "mistake due to lack of knowledge and mistake due to a misnomer," and that distinction was necessary to our holding. Mistake due to lack of knowledge, we said, is not a " 'mistake' as that term is used in Rule 15(c)(3)(B)." *Id.* We called the distinction between misidentification and lack of knowledge "inherent in the meaning" of the Rule and stated plainly: "Rule 15(c)(3)(B) is not satisfied when the claimed mistake consists of a lack of knowledge of the proper party to be sued." *Id.* at 367, 368. We did not use the mistake language "as a shorthand term to hold that the party to be added must

have known of the mistake," as the majority maintains. *Ante* at 472. We decided the case by interpreting the word *mistake* in Rule 15(c)(3) to include one kind of error and exclude another. *See* 457 F.3d at 368. The plaintiff in *Locklear* raised only two arguments on appeal, the first of which was that his reason for replacing one party name with another qualified as a mistake under Rule 15(c)(3). *See id.* at 365. We determined that it did not, and ended our deliberation there. *Id.* at 368. Perhaps our judgment also could be justified by a lack of notice to the proper defendant, but we did not rely on that justification in our decision. I find no support for the majority's claim that in *Locklear* "[w]e held that the manufacturer was not chargeable within the limitations period with knowledge that it should have originally been named a defendant." *Ante* at 472. More importantly, we decidedly did not limit our holding in *Locklear* "to the conclusion that the machine manufacturer did not have the knowledge required by Rule 15(c)(3)(B)," as the majority maintains. *Ante* at 472. Make no mistake: today the majority overrules *Locklear.* I would not.

I see no reason to abandon our precedent of almost twenty years in favor of a policy that will decrease the incentives for plaintiffs to investigate their cases fully before filing a lawsuit. I think it good that our former interpretation of the Rule limited the mistakes courts would forgive to the clerical and inconsequential. Rule 15(c)(3) is not intended to excuse errant lawyering, but to forgive technical, clerical errors. *See* Fed.R.Civ.P. 15 advisory committee's note (1991 amendment) ("[A] complaint may be amended at any time to correct a formal defect such as a misno-

---

* For other courts that limit relation back based upon the nature of the plaintiff's mistake, *see, e.g., Rendall–Speranza v. Nassim*, 107 F.3d 913, 919 (D.C.Cir.1997) ("We hold, therefore, that the plaintiff's attempt belatedly to name

the IFC as a defendant because she had earlier failed to appreciate that the IFC might be liable is not an amendment based upon 'a mistake of identity'...."); *Wilson v. United States Gov't*, 23 F.3d 559, 563 (1st Cir.1994).

mer or misidentification.") It is reasonable to expect plaintiffs properly to identify those whom they hale into court. It is likewise reasonable to penalize careless plaintiffs who tarry too long by forbidding them to substitute the correct defendant after the limitations period has expired.

The majority's interpretation will result in more lawsuits filed against incorrect defendants as the costs associated with improperly identifying the proper defendant drop. Plaintiffs, knowing that courts will allow them to swap defendants if they select the wrong one by mistake, will have fewer incentives to name the correct defendant the first time. The incentives to name the proper defendant will remain very strong of course, but on the margin we should expect an increase in the number of incorrect defendants sued now that the majority has given Rule 15(c)(3) a more liberal interpretation. Even though mistaken plaintiffs will eventually shift their lawsuits to the proper defendants (or lose the lawsuits), the improper ones must still bear the costs associated with defending themselves until the correct defendants are found.

Under the interpretation of Rule 15(c)(3) we articulated in *Locklear*, Goodman would not be permitted to relate his amendment back. Goodman intended to sue Tracer's successor-in-interest, but he mistakenly concluded that the successor was Praxair, Inc. instead of Praxair Services, Inc. As he admits, he "simply failed to determine that the party [he] wanted to sue—Tracer's successor-in—interest-was PSI rather than PI, in part because of the confusing corporate relationships." (Appellant's Reply Br. 14.) Similarly, Locklear knew he wanted to sue the manufacturer of the machinery that injured him; he simply failed to determine that the party was Luna and Bergman instead of Hassleholms. *See Locklear*, 457 F.3d at 364. Goodman's case may seem a bit more

sympathetic because his initial guess came so close to the mark, but the policy implications for allowing relation back in his case are the same as they were in *Locklear*. If Goodman is permitted to relate back his amended complaint, a future plaintiff will be free to file suit against a placeholder defendant while continuing to search for the proper one any time the plaintiff can make a plausible claim that he believed the originally named defendant was the correct one, provided the other requirements of Rule 15(c) are met.

The majority acknowledges the "good-sense results" obtained by courts that interpret Rule 15(c)(3) as I do—as we did before today—but chooses to part ways with them. *Ante* at 470–71, 472–73. I would remain in their company and continue to reach those good-sense results.