**Murray MALIN, M.D., Plaintiff**

v.

**SIEMENS MEDICAL SOLUTIONS HEALTH SERVICES and Siemens Medical Solutions USA, Inc., Defendants.**

**Civil No. PJM 07–1896.**

United States District Court, D. Maryland.

Sept. 22, 2008.

Murray Malin, Rockville, MD, pro se.

Alan D. Berkowitz, Melissa Bergman Squire, Dechert LLP, Philadelphia, PA, Dennis J. Lawson, Dechert LLP, Washington, DC, for Defendants.

## *OPINION*

PETER J. MESSITTE, District Judge.

In this action, *pro se* Plaintiff Murray Malin, M.D. ("Malin") has filed a one-count complaint under the whistleblower protection provisions of the Sarbanes–Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A, alleging that Defendant Siemens Medical Solutions Health Services ("Health Services") and Defendant Siemens Medical Solutions USA, Inc. ("Siemens Med") terminated his employment and engaged in other discriminatory conduct in retaliation for his reported concerns about the safety of certain of Defendants' products. Malin has filed a Motion for Leave to Amend Complaint seeking to add as a defendant Siemens AG, the parent company of Health Services and Siemens Med. Defendants have filed a Motion for Summary Judgment on the ground that they are not subject to § 1514A's provisions and a Second Motion for Summary Judgment as to the merits of Malin's whistleblower claim. Malin has filed a Motion to Compel in which he alleges that Defendants have prevented him from obtaining information relevant to his claim. These Motions have been fully briefed and no hearing is necessary to rule upon them. *See* Local R. 105.6 (D.Md. 2008).

For the following reasons, Defendants' first Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, Malin's Motion to Amend is DENIED WITHOUT PREJUDICE, Defendants' Second Motion for Summary Judgment is DENIED WITHOUT PREJUDICE, and Malin's Motion to Compel is GRANTED IN PART and DENIED IN PART.

### I.

According to the Complaint:

Defendants Health Services and Siemens Med are U.S.-based corporations with principal places of business in Malvern, Pennsylvania. Both are wholly-owned subsidiaries of a German-based company, Siemens AG, a publicly-traded entity.

On or about November 17, 2002, Malin, an anesthesiologist, was hired by Defendants as a Systems Analyst. In this position, he was assigned to the Soarian Enterprise Segment of Health Services located in Malvern, where he worked primarily on software products that manage information about patients and resources in operating rooms and critical care environments in hospitals and other healthcare facilities.

During the course of his employment, Malin identified a number of concerns over the safety of a software product of Defendants and their marketing activities relative to it.[1] Specifically, he believes Defendants submitted documents to the Food and Drug Administration (FDA) containing false statements of fact with respect to the product. In addition, he believes that Defendants, in communicating with prospective buyers, misrepresented the utility of the product, creating the impression that it supported physician workflow in a critical care environment, despite knowledge that the product failed to accomplish this task. Although Malin identified a number of safety hazards he believed were posed by the product and communicated these concerns to various management personnel, he contends that Defendants

---

1. Malin alleges that he raised concerns about Chart Assist, a software product that was used as a component of several other of Defendants' products.

persisted in making false or misleading representations about the product.

On September 19, 2005, shortly after he raised these concerns about product safety, Malin was notified by Defendants that his position had been selected for elimination as part of a reduction in force, and his employment was terminated. Malin claims that this explanation for his discharge was pretextual because Defendants have since listed comparable job postings on their website and have not responded to his application for these positions.

## II.

On December 17, 2005, Malin, represented by counsel, filed a complaint against Health Services and Siemens Med with the Occupational Safety and Health Administration ("OSHA") of the Department of Labor ("DOL") under the whistleblower protection provisions of Title VIII of the SOX, specifically Section 806 of the Corporate and Criminal Fraud and Accountability Act, codified at 18 U.S.C. § 1514A.[2] *See* Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl., Ex. A (OSHA complaint). By letter dated March 30, 2006, the OSHA Regional Administrator dismissed the case for lack of jurisdiction, finding that Defendants were not publicly-traded entities and thus not "companies" within the meaning of § 1514A. *Id.* at Ex. C (letter from OSHA Regional Administrator).

Malin appealed this decision to the DOL, requested a hearing before an Administrative Law Judge ("ALJ"), and sought leave to amend his complaint to name Siemens AG as a defendant. *Id.* at Ex. D (Malin's "Objections to Findings and Request for Hearing" filed with the DOL's Office of Administrative Law Judges). By decision dated July 27, 2006, however, the ALJ denied Malin's request to amend his complaint, concluding that the proposed amendment was time-barred and that the rights of the parties would be prejudiced by it, given the significant amount of time that had passed since the date of the alleged retaliation and Malin's failure to provide notice to Siemens AG despite being made aware of the jurisdictional issue as early as March 2006. *Id.* at Ex. E (Order Denying the Complainant's Motion to Amend, dated July 27, 2006).

The ALJ thereafter permitted the parties to take jurisdictional discovery as to whether the corporate relationship among Health Services, Siemens Med, and Siemens AG might subject Defendants to liability under § 1514A's whistleblower provisions, extending coverage to "any officer, employee, contractor, subcontractor or agent" of a publicly-traded company. Defs.' Resp. to Pl.'s Mot. to Amend Compl. at 5. After discovery closed, Defendants filed a Motion for Summary Decision, asserting that they were not covered by SOX because they were neither public entities nor agents of a public entity. *Id.* On May 21, 2007, before the ALJ was able to issue a decision, Malin, through counsel, informed the ALJ that he intended to withdraw his case from the DOL in order to proceed in federal court. *Id.*

On July 15, 2007, Malin initiated the present action in this Court, filing a *pro se*

---

**2.** OSHA is given responsibility to investigate complaints brought under the Act. 18 U.S.C. 1514A(b)(1)(A) ("A person who alleges discharge or other discrimination by any person in violation of [the whistleblower protection provisions] may seek relief ... [by] filing a complaint with the Secretary of Labor."); 29 C.F.R. § 1980.103(c) (complaint should be filed with OSHA Area Director for the geo-graphical area in which the employee resides or was employed); *Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health,* 67 Fed.Reg. 65,008 (Oct. 22, 2002). Once OSHA has rendered a decision, a party may request review by a Department of Labor Administrative Law Judge ("ALJ"). 29 C.F.R. §§ *1980.106(a), 1980.107(a), 1980.109(a).*

Complaint essentially identical to the administrative complaint filed with OSHA in the administrative proceeding.

### III.

The Court considers first Malin's Motion for Leave to Amend Complaint to add Siemens AG as a defendant.

■ Although leave to amend should ordinarily be freely granted, it is properly denied where, the amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Keller v. Prince George's Co.,* 923 F.2d 30, 33 (4th Cir.1991) (upholding district court order denying plaintiff leave to amend his complaint to include claims that were barred by the applicable statute of limitations because such amendment would be futile). At this juncture, it is not entirely clear that the addition of Siemens AG would be futile.

Before a plaintiff can assert a cause of action in federal court under SOX's whistleblower protection provisions, he must file a complaint with OSHA within 90 days of the alleged adverse employment action. *See* 18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103. If the plaintiff meets the administrative filing requirement and a final decision is not issued within 180 days of the filing of the complaint, he may bringing an action for de novo review in the appropriate United States district court. *See* 18 U.S.C. § 1514A(b)(1)(B); 29 C.F.R. § 1980.114(a). If these requirements are not met, a federal court lacks jurisdiction to hear the claim. *See Collins v. Beazer Homes USA, Inc.,* 334 F.Supp.2d 1365, 1373 & n. 5 (N.D.Ga.2004) (setting forth the administrative prerequisites to bringing a whistleblower protection action in federal court).

■ Although Malin's OSHA complaint was filed within 90–days of the alleged adverse action,[3] only Health Services and Siemens Med were named as respondents in the OSHA complaint. Malin did not seek to amend his administrative complaint until May 12, 2006, well outside the 90–day period. Similarly, his Complaint in the present action named only Health Services and Siemens Med in the caption. His Motion for Leave to Amend and add Siemens as a defendant comes approximately two years after he initiated the administrative proceedings. Thus, unless the amendment properly relates back not only to the filing of this action but to the filing of Malin's initial administrative complaint, it would be time-barred, hence futile.[4]

---

**3.** Although Malin states in both his OSHA complaint and his Complaint in the present action, that his "termination is actionable" under § 1514A, *see* Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl., Ex. A (OSHA Compl. at ¶ 51, 59, 60); Compl. at ¶¶ 51, 59, 60, he also implies that Defendants engaged in retaliatory conduct by refusing to rehire him when positions comparable to the one from which he was laid off became available. *See* Defs.' Resp. to Pl.'s Mot. for Leave to Amend Compl., Ex. A (OSHA Compl. at ¶ 44) ("[o]n September 24, 2005, Siemens listed a job posting for a comparable position on its website. Dr. Malin applied for this and other similar positions, but Siemens never responded to his applications."); Compl. at ¶ 44 (same). Because Malin's OSHA claim was filed on December 17, 2005, the Court concludes that it was filed within 90–days of any retaliatory conduct alleged by Malin.

**4.** An amendment that adds a new defendant relates back to the date of the original pleading if (1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named as a defendant "but for a mistake concerning the identity of the proper party." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 467 (4th Cir.2007) (quoting Fed.R.Civ.P. 15(c).) In *Goodman,* the

Fourth Circuit interpreted Federal Rule of Civil Procedure 15(c)'s "mistake" language within the context of the rule's liberal policy that a plaintiff may amend for any reason and that amendments should be freely allowed, as well as the overall goal of the federal rules as articulate in Rule 1 that cases should be administered "to secure their just determination." *Id.* Thus the Fourth Circuit held that:

> At bottom, the inquiry, when determining when an amendment relates back looks at whether the plaintiff made a mistake in failing to name a party, in naming the wrong party, or in misnaming a party in order to prosecute his claim as originally alleged, and it looks into whether the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation. When a party has been given fair notice of a claim *within the limitations period* and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back.

*Id.* at 471 (emphasis in original).

As in the present case, the plaintiff in Goodman identified the proposed "new" defendant in the body of his complaint but failed to list this party within the caption. *Id.* at 462. The Fourth Circuit held that the new party, a successor in interest to the party named in the caption, knew or should have known that it was the proper party to Goodman's suit based on the clear expression within his complaint of his intention to sue it and because knowledge of the suit could be imputed to it by reason of the fact that it and the named defendant were closely related business entities represented by the same lawyers. *Id.* at 474–75.

While the record here reflects that Health Services and Siemens Med are separately incorporated entities and indirect subsidiaries of Siemens AG, various representations by Defendants could have reasonably led Malin to at least believe that these entities were part of a single, closely integrated "Siemens" company. *See Defs.' Mot. Summ. J.*, Ex. H (Malin's application for employment) ("... do you have authorization to work for Siemens in the United States?"); Ex. I (Malin's offer letter) (congratulating Malin for his "decision to join Siemens Medical Solutions Health Services Corporation ('Siemens')" and referring to his employer as "Siemens" throughout the remainder of the document which explained the terms of his employment; moreover, while the footer of the letterhead indicates the company's full name, the header simply includes the word "SIEMENS"); Ex A, 1 (website listing Siemens' Med's human resources policy containing a logo in which the word "SIEMENS" appears in large letters over the abbreviations of various entities, including "Med USA" and "HS"); Ex. O (Sept. 19, 2005 Memo to Malin explaining the terms of his severance) (while the first line states that "Siemens Health Services management" decided to eliminate his position, the second line states "Today is your last day with Siemens," and header of the memo indicates that the document is "Siemens Confidential—Internal Use Only"); Ex. P (letter from Jane Marshall, Human Resources Partner for Siemens Medical Solutions Health Services, outlining the terms of Malin's separation from and severance agreement with "Siemens Medical Solutions Health Services Corporation ('Siemens')"); Ex. F. (Malin Dep. at 32:10–14, 35:8–15) (stating that "[m]y understanding [was that] I would be working for Siemens AG" and explaining that while "[n]o one ever said I would be a employee of Siemens AG. This was my first job in corporate America so, yes, I always thought it was Siemens AG.").

Based on these circumstances, it may be appropriate, under *Goodman*, to charge Siemens AG with knowledge that it was the entity Malin intended to be properly answerable for his claim so that his amendment could be found to relate back to the filing of his initial administrative action. *But see Hanna v. WCI Communities, Inc.*, 2004 U.S. Dist. LEXIS 25652, at \*7–\*9 (S.D.Fla. Nov. 15, 2004) (holding that plaintiff's claim against an individual defendant was barred because he failed to name the individual defendant as a respondent in his administrative complaint, rejecting plaintiff's argument that the individual defendant was on notice of the claim because he was named in the body of the administrative complaint because the purpose of the SOX's administrative filing requirement is "to afford OSHA the opportunity to resolve the allegations administratively") (internal citations omitted); *Bozeman v. Per–Se Technologies, Inc.*, 456 F.Supp.2d 1282, 1356–1358 (N.D.Ga.2006) (dismissing plaintiff's SOX claims against two individual defendants, finding that plaintiff failed to exhaust his administrative remedies with respect to these individuals where plaintiff identified them as actors in the body of the administrative complaint but did not name them in the heading of the administrative complaint); *Smith v.*

At the same time, even if the Court were find that the addition of Siemens AG is not time-barred, there would remain the issue of whether Siemens AG, as a publicly-traded corporation, could be held liable for the actions of its non-public subsidiaries. The Court concentrates on the latter concept.

## IV.

In their Motion for Summary Judgment, Defendants argue that Malin is not a protected employee under SOX's whistleblower provisions because they are neither public companies, nor agents of a public company within the meaning of § 1514A. In response, Malin argues that Defendants are indeed agents of Siemens AG for purposes of whistleblower liability because SOX requires Siemens AG to include Defendants' financial information in its annual reports to the Securities and Exchange Commission and applies its corporate compliance policy to Defendants. In other words, Malin asserts that through these SOX-mandated activities, Siemens AG "exerts control and establishes an agency relationship (and coverage under SOX) with Defendants for every activity performed, guideline issued, and job position filled that impacts SOX compliance." Pl.'s Resp. to Defs.' Mot. Summ. J. at 18.[5] Defendants seek summary judgment as to this issue.

## A.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is properly granted against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court is obligated to view the facts and inferences drawn from the facts in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26

---

*Corning Inc. et al,* 2007 WL 2120375, at *2 (W.D.N.Y. Jul. 23, 2007) (dismissing plaintiff's SOX whistleblower complaint against an individual defendant on the ground that plaintiff failed to name the individual defendant as a party in the administrative complaint and noting that "federal courts that have considered the issue have consistently held that a plaintiff may not sue a particular defendant in federal court ... unless he has exhausted his administrative remedies as to that defendant...."). The Court will assume for present purposes, without deciding the issue, that the addition of Siemens AG would relate back to the initial administrative filing.

5. In support of their respective positions, the parties cite a number of DOL Administrative Law Judge (ALJ) opinions discussing the application of § 1514A to non-public subsidiaries of a public parent, which the Court recognizes as persuasive authority on this issue. *See Livingston v. Wyeth, Inc.*, 2006 WL 2129794, 2006 U.S. Dist. LEXIS 52978 (M.D.N.C. July 28, 2006) ("Due to the dearth of federal court decisions addressing [the retroactivity application of SOX], the Court will consider these administrative decisions useful for guidance, although the Court is not bound by them.") (citing *Collins*, 334 F.Supp.2d at 1375 n. 10).

L.Ed.2d 142 (1970); *Matsushita Elec. Indus. Comp.*, 475 U.S. at 587–88, 106 S.Ct. 1348. The non-moving party may not rest upon its mere allegations, however, but must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). Moreover, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

### B.

SOX's whistleblower protection provisions state in relevant part:

> Whistleblower protection for employees of publicly traded companies. No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l* ), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—

18 U.S.C. § 1514A(a).

■ Section 1514A does not specifically refer to non-publicly traded subsidiaries of public companies as within its scope, nor does it define the circumstances under which an entity of a type not specifically mentioned in the statute may act as an agent of a covered entity for purposes of whistleblower liability. *See generally Rao v. Daimler Chrysler Corp.*, 2007 WL 1424220, 2007 U.S. Dist. LEXIS 34922 (E.D.Mich. May 14, 2007). Few federal courts have addressed the issue of whether a non-public subsidiary of a public parent is subject to § 1514A, and the DOL ALJ opinions on this issue suggest that the agency has not adopted a uniform interpretation of § 1514A's scope.[6] *See generally,* Brent B. Nicholson, *The Perils of Parenthood and Other Dangerous Relationships Under the Whistleblower Protection Provision of the Sarbanes–Oxley Act of 2002*, 2 ENTREPREN. BUS. L.J. 415 (2007); Eden P. Sholeen & Rebecca L. Baker, *Unlocking the Mysteries of SOX Whistleblower Claims*, 44 HOUSTON LAWYER 10, 11 (2007).

In *Rao v. Daimler Chrysler Corp.*, which contains the most extensive discussion of the issue, the district court for the Eastern District of Michigan considered whether and under what circumstances a non-public subsidiary of a public parent is subject to SOX's whistleblower protection provisions, concluding that a non-public subsidiary is not an agent of its parent for purposes of § 1514A merely on the basis of its subsidiary status. *Id.* In reaching this conclusion, the court rejected a line of ALJ opinions which, based on SOX's remedial nature and extensive financial reporting requirements, broadly interpreted § 1514A's whistleblower protection provisions as covering all "constituent units" of a public company, including its non-publicly traded subsidiaries. *Id.* at *3, 2007 U.S. Dist. LEXIS 34922 at *9–*10 (quoting *Morefield v. Excelon Services, Inc.*, 2004–SOX–00002 at 6 (A.L.J. Jan. 24, 2004))

---

6. The same can be said of the corollary issue of whether a public parent can be liable for the acts of its non-public subsidiary that are alleged to have violated § 1514A.

("[a] publicly traded corporation is, for Sarbanes–Oxley purposes, the sum of its constituent units; and Congress insisted upon accuracy and integrity in financial reporting at all levels of the corporate structure, including the non-publicly traded subsidiaries.'").

The Michigan court adopted instead the reasoning of another line of ALJ opinions that apply "the general principle of corporate law that a parent is not automatically liable for the actions of a subsidiary, absent a clear intent from Congress to the contrary." *Id.* at *4, 2007 U.S. Dist. LEXIS 34922 at *12 (citing *Lowe v. Terminix Int'l Co., LP,* 2006–SOX–00089 at 7–8 (A.L.J. Sept. 15, 2006); *Bothwell v. Am. Income Life,* 2005–SOX–00057 at 6, 2005 WL 4889047 (A.L.J. Sept. 19, 2005)). The court reasoned that because Congress expressly included subsidiaries along with parent companies in other provisions of SOX, such as the Act's financial reporting provisions, it could have specifically included subsidiaries within the purview of § 1514A if it wished; thus, the absence of a specific reference to non-public subsidiaries within § 1514A indicates that general corporate law principles should govern and employees of non-public subsidiaries are not covered under *§ 1514A*—at least absent evidence that they were acting as agents of the parent. *Id.* at *4–*5, 2007 U.S. Dist. LEXIS 34922 at *12–*14; *see also Lowe,* 2006–SOX–89, at slip op. 7 (Defs.' App. of Cases in Support of Mot. Summ. J., Ex. 1) ("The inclusion of a reference to subsidiaries in another section of the statute, when combined with the ab-sence of the term in the whistleblower section, is more likely evidence of an intent to not include subsidiaries in the whistle-blower section, than an indication that Congress assumed that the uncommonly broad interpretation would be given to the word company."); *Barron v. ING North America Ins. Corp.,* 2005–SOX–50, 2006 WL 3246884, at *3 (A.L.J. Feb. 17, 2006) ("neither the statutory language of the Act nor its legislative history suggests Congress intended to include alone a non-publicly traded subsidiary of a publicly traded company as a covered employer.").

Applying similar reasoning, the *Rao* court also held that a general agency relationship between the public parent and non-public subsidiary is insufficient to implicate the whistleblower provisions of § 1514A; rather, the subsidiary must have the authority to act and actually take some action against the whistleblowing employee on behalf of the public company. 2007 WL 1424220 at *4–*5, 2007 U.S. Dist. LEXIS 34922 at *14–*15 (citing *Klopfenstein v. PCC Flow Technologies Holdings, Inc.,* A.R.B. No. 04–149, 24 IER Cases 1036, 1046, 2006 DOLSOX LEXIS 59, at *33 (A.R.B. May 31, 2006)) (remanding the matter to the ALJ to "make whatever factual findings are necessary to properly apply agency principles in determining whether either or both [subsidiaries] were [the parent's] agents with regard to the termination of Klopfenstein's employment.").[7]

This Court agrees with the reasoning in *Rao:* to hold that non-public subsidiaries

---

7. "The Administrative Review Board of the Department of Labor serves the same function relative to an ALJ as the Court of Appeals does to a district judge in the federal Article III court system." *Rao,* 2007 WL 1424220 at *5 n. 5, 2007 U.S. Dist. LEXIS 34922 at *15 n. 5; *see also* Nicholson, 2 ENTREPREN. BUS. L.J. 415, 420 ("Decisions by an ALJ are subject to timely appeal to the Administrative Review Board ("ARB").... Decisions of the ARB are considered final decisions of the Secretary of Labor and may be appealed to the United States Court of Appeals. If there is not a final decision by the Secretary within 180 days of filing the complaint, the claimant may initiate a lawsuit in the District Court.") (citing applicable sections of the U.S. Code and Code of Federal Regulations).

are subject to the whistleblower protection provisions simply because their parent company is required by other SOX provisions to report the subsidiary's financial information or to adopt an umbrella compliance policy would widen the scope of the whistleblower protection provisions beyond what Congress appears to have intended. *See Savastano v. WPP Group, PLC,* 2007 SOX–00034, at slip op. 7–8 (Defs.' App. of Cases in Support of Mot. Summ. J., Ex. 3) (discounting evidence proffered by the complainant suggesting that her private employer acted as an agent for its public parent for purposes of collecting and reporting financial data and concluding that the non-public employer was not liable under SOX where complainant made no allegation that "anyone at [the public parent] even knew about any decision regarding her employment."); *Barron,* 005–SOX–50, 2006 WL 3246884, at *3 (finding that a non-public subsidiary was not subject to SOX even though its parent company published a world-wide code of business conduct which applied to all its subsidiaries where the parent did not have any involvement in the day-to-day management of its subsidiary, including its subsidiary's personnel decisions); *Hughart v. Raymond James & Assoc., Inc.,* 2004–SOX–009, 2004 WL 5308719, at *43–44 (A.L.J. Dec. 17, 2004) (finding that complainant's employer, a non-public subsidiary, was not covered by SOX's whistleblower provision even though employees of the subsidiary were obligated to abide by the ethics policy of the parent company); *Reno v. Westfield Corp. Inc.,* 2006–SOX–00030, 2006 WL 3246834, at *3 (A.L.J. Feb. 23, 2006) (noting that being an "agent of a publicly traded company is not enough to impose liability under Section 1514A," rather the complainant must demonstrated the agent acted on behalf of the publicly traded company when discriminating against him).

■ Indeed, where non-public subsidiaries have been held to be subject to § 1514A, the subsidiary was found to have acted as an agent of its public parent particularly with respect to employment matters or the parent was involved in some direct manner in the alleged misconduct. *E.g. Carnero v. Boston Scientific Corp.,* 433 F.3d 1, 4–7 (1st Cir.2006) (holding that complainant could proceed on a SOX whistleblower claim despite the fact that he was directly employed by a non-public subsidiary of a public company where he presented evidence that the parent company's employees exercised "extensive and continuous control" over his work duties, he frequently traveled to the parent company's office to "meet with supervisors there" and he reported his concerns of alleged accounting misconduct to employees of the parent company); *Collins,* 334 F.Supp.2d at 1369–70, 1373 n. 7 (Addressing the issue in a footnote, the court allowed the plaintiff to proceed on her SOX whistleblower claim against the publicly-traded parent of her non-public employer where the parent company admitted that it had the authority to affect the terms and conditions of her employment; in the recitation of facts, the court also noted that the plaintiff had presented evidence that she made complaints concerning her employment and her employer's activities directly to the parent company, which undertook an investigation and was consulted regarding the decision to terminate her.); *see also Platone v. Atlantic Coast Airlines, Holdings, Inc.,* 2003–SOX–27, 2004 WL 5032621, at *21 (ALJ Apr. 30, 2004) (holding that complainant demonstrated sufficient facts to warrant holding a public parent company liable for the acts of its non-public subsidiary where the complainant received her offer letter on letterhead that bore the logo of the parent company, her 401K plan and other employee benefits were provided by the parent company, and one of the board members of the parent company was also president and CEO of

the subsidiary and made the ultimate decision to terminate the complainant's employment).

Consistent with this Court's holding, then, unless Malin can establish that Defendants acted as Siemens AG's agent with respect to employment matters in general or the alleged retaliatory conduct in particular, neither Defendants nor Siemens AG is subject to § 1514A's whistleblower protection provisions. Indicia of a general agency relationship will not suffice to impute liability See *Brady v. Calyon Sec.*, 406 F.Supp.2d 307, 318 & n. 6 (S.D.N.Y.2005) (rejecting the plaintiff's argument that SOX should apply to all agents who act on behalf of public companies in some capacity and stating that "the proper application of 'the agency' provision is to companies that have acted as agents of publicly traded companies with respect to their employ-ment relationships."); *see also Johnson v. Siemens Building Technologies, Inc.*, 2005–SOX–00015, 2007 WL 4895941 (A.L.J. Nov. 27, 2007) (holding that Siemens AG cannot be liable for the actions of its non-public subsidiary where the subsidiary has its own board of directors and makes its own management and personnel decisions and there was no evidence that Siemens AG was involved with or consulted regarding complainant's reports of accounting irregularities or the decision to terminate her employment).[8]

This suffices to justify Defendants' Motion as to the law applicable to this case. It remains to consider the factual record herein.

## C.

As it currently stands, the record reflects the following:[9]

---

**8.** Although there is evidence that Defendants made certain representations concerning the corporate relationships among and between "Siemens" entities from which Malin might reasonably have believed that Defendants and Siemens AG were a single entity, *see* note 3 *infra*, the case law suggests that Defendants have to have had actual or apparent authority to bind Siemens AG as to the matters at issue or that Siemens AG had to have had some ability to affect the terms and conditions of Malin's employment. To hold otherwise would undermine the distinguishing feature of the corporate relationship between a parent and its subsidiary, *i.e.* the liability shield, on which the holding in *Rao* is grounded. *See Rao*, 2007 WL 1424220, at *4, 2007 U.S. Dist. LEXIS 34922, at *13–*14 ("Congress only listed employees of public companies as protected individuals under *§ 1514A*, and it is not the job of this Court to rewrite clear statutory text. This is especially so in light of the corporate law principle that parent companies are not ipso facto liable for the actions of their subsidiaries...."); *See also Parker v. Junior Press Printing Service, Inc.*, 266 Md. 721, 296 A.2d 377, 380–381 (1972) (Apparent authority of an agent to bind a principle as to the agent's conduct with a third party is created "by written or spoken words or any other conduct *of the principal* which, reason-ably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.") (citing Restatement (Second) of Agency § 27 (1958)) (emphasis added); *Velasco v. Gov't of Indon.*, 370 F.3d 392, 400 n. 3 (4th Cir.2004) ("Apparent authority depends on some conduct by the principal, communicated to a third party, that reasonably causes a third party to believe that the agent has authority to conduct a particular transaction.... It is well-established that an agent may not create his own apparent authority.") (internal citations omitted); *Integrated Consulting Servs. v. LDDS Communications., Inc.*, 1999 WL 218740, at *4, 1999 U.S.App. LEXIS 7255, at *12 (4th Cir. April 15, 1999) ("To establish an agency relationship by inference, it must be shown that (1) the agent was subject to the principal's right of control; (2) the agent had a duty to act primarily for the benefit of the principal; and (3) the agent held the power to alter legal relations of the principal.") (citing *Schear v. Motel Management Corp.*, 61 Md.App. 670, 487 A.2d 1240, 1248 (Md.Ct.Spec.App.1985)).

**9.** Except as otherwise indicated, citations to exhibits refer to exhibits attached to Defendants' Motion for Summary Judgment [Paper No. 21].

██ Health Services is a wholly-owned subsidiary of Siemens Med. Ex. A (Decl. of Anthonie Goudemond, Vice President for Siemens Med at ¶¶ 2, 3). Siemens Med is a wholly-owned subsidiary of Siemens Corporation, which is indirectly owned, through two intervening layers, by Siemens AG, a German company that is publicly traded as defined by § 1514A of SOX. Ex. A (Goudemond Decl. at ¶ 2). Of these entities, only Siemens AG is a publicly-traded company. *Id.* While both Health Services and Siemens Med are incorporated in Delaware and located in Malvern, Pennsylvania, they are separately incorporated entities. *See* Ex. B (Certificate of Incorporation of Siemens Medical Systems, Inc.; Certificate of Amendment of Siemens Medical Systems, Inc. to Siemens Medical Solutions USA, Inc.); Ex. C (Amended and Restated Certificate of Incorporation of Shared Medical Systems Corporation, renaming the corporation as Siemens Medical Solutions Health Services Corporation). Moreover, each entity has its own sets of officers who operate independently of Siemens AG and are responsible for day-to-day management decisions affecting the running of their respective businesses. *See* Ex A (Goudemond Decl. at ¶ 5); Ex. D (Dep. of Edward Grady, Vice President and Controller of Siemens Med at 14:17–18, 15:1–4) ("The management of Med controls the business of Med.... The operating policies within Med are—again, Med's—Med's operations are managed by Med's management."); Ex. E (Goudemond Dep. at 19:20–22, 31:22–32:3) ("AG doesn't manage Med, Med manages itself. We have our own Board of Directors, the businesses have their own presidents and CEOs.... Health Services is managed entirely locally, it has its own local president and own local CFO and management team.").

Defendants have also proffered evidence to the effect that Siemens AG does not participate in employment matters relative to Health Service or Siemens Med and that no one from Siemens AG was involved in Malin's hiring, supervision, or termination. *See* Ex. D (Grady Dep. at 33:6–11) ("Q: Do AG and Med share a payroll system? A: No. Q: Does AG have any direct or indirect financial responsibility for the payroll of Med employees? A: No."); Ex. E (Goudemond Decl. at 20:10–13) ("... does AG get involved or control any of Med's Human Resources issues? A: They do not control any of Med's Human Resources issues."); Ex. M (Malin's paystubs from Health Services); Ex. N (Malin's 2004 and 2005 W–2 Forms listing employer's name as "Siemens Medical Solutions HS."); Defs.' Reply to Mot. Summ. J., Ex. A (Decl. of Pat Pettinati, Senior Director of Compensation and Benefits for Siemens Med, at ¶¶ 3, 4, 5) (stating that the benefits, pension plan, and salary structure and pay bands for employees of Health Services and Siemens Med are "entirely separate" from those of Siemens AG); Ex. I at 31–32 (letter dated November 13, 2002 from Matthew Geise, Staffing Services for Health Services, congratulating Malin on his decision to join "Siemens Medical Solutions Health Services Corporation."); Ex. F (Malin Dep. at 35:12–13) ("No one ever said [during the interviewing process] that I would be a[n] employee of Siemens AG...."); Ex. O (Sept. 19, 2005 memo to Malin) ("Siemens Health Services management reviewed the position you currently hold and has decided, based on business need, that it must eliminate your position."); Ex. P (Sept. 19, 2005 letter to Malin from Jane Marshall, Human Resources Partner, Health Services) ("Enclosed for your review and signature is a Severance Agreement, which established the terms of your separation from Siemens Medical Solutions Health Services Corporation."); Ex. K (Decl. of Anne Lara, an employee of Health Services and Malin's supervisor during the time period in

question, at ¶¶ 6, 7) (stating that as Malin's direct supervisor, she "as directly involved in the process in which Dr. Malin was selected for layoff," and that "[n]o one from Siemens AG participated in this decision."); Ex. Q (Decl. of Jane Marshall, Director of Human Resources Health Services, at ¶ 2, 4, 5) (stating that "Murray Malin received his paychecks from Siemens Health. His benefits were distributed in accordance with the [Siemens Med] policies ...," and that "Siemens Health employees were the only employees who made the decision to eliminate Murray Malin's position. No one from Siemens AG participated in making this decision.").

Moreover, although Malin alleges that he notified several board members or other high-ranking officials at Siemens AG of his SOX administrative complaint, see Pl.'s Mot. for Leave to Amend Compl., Ex. 2 (unsigned copy of a letter dated Dec. 26, 2006 from Malin to a member of the Siemens AG Corporate Executive Committee and Chairman of Siemens AG's Internal Compliance Task Force), Malin sent his notices to these officials over a year after he was terminated. No record evidence indicates that the employees involved in the investigation of Malin's safety concerns or anyone involved in the decisions to terminate Malin and not rehire him was acting on behalf of Siemens AG.

Finally, while the record reflects that Defendants and Siemens AG shared one common board member, the identity and role of this individual is unclear. See Ex. 1 (Goudemond Decl. at ¶ 5) ("Siemens AG has 11 members on its Managing Board and 20 members of its Supervisory Board. Of these board members, only one sits on the boards of Siemens Health and Siemens Med."). Even so, there is no record evidence that this individual was involved in the day-to-day operations, general employment decisions, or the alleged retaliatory conduct of Defendants. Id. (stating that

Health Services and Siemens Med have their own set of officers who are responsible for day-to-day management decisions and that the officers of Health Services and Siemens Med do not serve as officers of Siemens AG). On the matter of Defendants' agency relationship vel non with Siemens AG, Malin has offered no relevant evidence to counter the evidence Defendants have marshaled. But see Section IV infra. It thus appears highly unlikely that he would be able to do so, even if given yet another extension of time to develop his case. See Johnson v. Siemens Building Technologies, Inc., 2007 WL 4895941, at *96–97 (holding that complainant failed to establish that non-public subsidiary or its employees were acting as agents of parent Siemens AG where subsidiary had its own board of directors and made its own management and personnel decisions and there was no evidence that Siemens AG was consulted regarding complainant's reports of accounting irregularities or involved in the decision to terminate her employment)

But, out of what is surely a generous excess of caution, the Court has decided to briefly defer deciding whether or not Defendants stand in an agency relationship to Siemens AG. The Court explains why in addressing Malin's Motion to Compel.

## V.

■ In his Motion to Compel, Malin claims that Defendants have "refused to provide a single piece of evidence" in response to his document requests and have refused to accept service of notices of depositions or otherwise facilitate depositions of persons whom he alleges are "agents of Defendants." In both his Motion to Compel and his response to Defendants' Motion for Summary Judgment, Malin implies that Defendants' actions have prevented him from compiling evidence relevant to the threshold issue of whether a sufficient

agency relationship exists so as to subject Defendants to liability under SOX's whistleblower provisions.

In response, Defendants indicate they have responded to all of Malin's discovery requests, either by providing the requested information or by objecting to the requests in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. Defendants note that they have not produced some of the documents requested by Malin on the ground that these documents were already provided to him during discovery in the underlying administrative action.[10] They also assert that they have not produced other documents because they believe these documents contain proprietary business information, which they advised Malin they would provide if he would agree to sign a confidentiality agreement, something he did not agree to do. Defendants remind that on April 25, 2008, the Court, at Malin's request, extended the discovery period for approximately 60 days, during which time Malin still failed to respond to Defendants' request for the confidentiality agreement or to otherwise advise them of his dissatisfaction with their discovery responses.[11] Malin's Motion to Compel was filed just two days before the expiration of the extended discovery period.

Defendants further contend, and the record supports the contention, that immediately upon receiving Malin's request to depose nine individuals, defense counsel agreed to accept service on behalf of one of its employees, Anne Lara, but advised Malin that they were "not prepared and/or able to accept service on the remaining eight individuals." Defs.' Resp. to Pl.'s Mot. to Compel, Ex E (E-mail correspondence between Malin and Melissa Bergman Squire, Esquire, of Dechert LLP). Defense counsel advised Malin that he if he wished to depose the other individuals he would need to effectuate proper service. *Id.* There is no evidence in the record that Malin contacted counsel to discuss or otherwise object to this response. Moreover, the record reflects that Malin did not respond to repeated attempts by counsel to schedule Anne Lara's deposition. *Id.* at Ex. F, G, and H.

In addition, it is unclear from the record which of the individuals Malin sought to depose possess information relevant to the threshold agency issue. For example, Malin sought to depose "Dr. Blau c/o Hackensack Hospital" and Dr. Joshua Lee of the University of San Diego Medical School. *See* Defs.' Resp. to Pl.'s Mot. to Compel, Ex. D (Malin's letter dated February 20, 2008 enclosing notices of depositions) & Ex. K (Pl.'s Initial Disclosures). These individuals do not appear to be employees of Defendants. *Id.* at Ex. K. While both individuals are alleged to have information about the safety of Defendants' charting product as well as Defendants' representations with respect to it, *id.*, neither Malin's pleadings nor evidence in the record suggests that these individuals have personal knowledge as to whether Health Services

---

10. Defendants also point out that during discovery in the underlying administrative proceeding, Malin had the opportunity to depose three high-level Siemens Med employees and that, in addition to the documents obtained through discovery in that proceeding, Malin is in possession of a number of documents he wrongfully retained at the time of his separation from Health Services or Siemens Med. Defendants allege that Malin copied these materials onto a disc upon learning of his termi-

nation, in violation his employment agreement and company policy. Malin admitted in his deposition to retaining information, particularly copies of E-mails related to his employment activities. *See* Defs.' Resp. to Pl.'s Mot. to Compel, Ex. I (Malin Dep. at 185:16–186:7).

11. The Court finds that the proposed confidentiality agreement, particularly as revised, complies with Local Rule 104.13.

and Siemens Med were acting at any relevant time as agents of Siemens AG relative to Malin's termination or decision not to rehire him. *Cf.* Compl. (neither Dr. Blau nor Dr. Lee are identified in the complaint). Similarly, many of Malin's 132 document requests appear to relate to his concerns about product safety and Defendants' marketing activities. *Id.* at Ex. R. Thus, it is impossible to determine, based on the record as it currently exists, which of the documents Malin requests are relevant to the agency issue. It is also unclear which of these documents Defendants object to as irrelevant or as already being in Malin's possession and which they are willing to produce if Malin agrees to execute a confidentiality agreement.

The Court is strongly disinclined to delay final resolution of this case, given the late stage of litigation,[12] as well as Malin's apparent failure to pursue discovery in an active and timely manner or to consult with defense counsel regarding his discovery concerns prior to filing his Motion to Compel, as required by Local Rule 104.7. However, in deference to Malin's *pro se* status and in light of his allegations that he has been unable to fully develop the record, the Court will GRANT his Motion to Compel, but only in a very limited respect.

For a period of ninety days hereafter, *i.e.*, until December 22, 2008, Malin may take discovery but only on the issue of whether Defendants acted as an agent of Siemens AG with respect to Malin's hiring, supervision, and termination. No other discovery will be permitted, including but not limited to the alleged safety problems of Defendants' product. As for any and all documents Malin may request (and any requests should be made by him promptly and with reasonable specificity), Malin

must sign a confidentiality agreement first or the documents need not be provided. Defendants, however, may not take the position that they have already furnished relevant documents to Malin, but must produce the requested documents de novo. As for depositions, the scope of inquiry may pertain only to Malin's hiring, supervision, and termination, not to the alleged safety problems of Defendants' product. Defendants' counsel shall accept notices of deposition, without the need for a summons, for any employee or officer of Defendants. Otherwise, Malin must arrange for service according to the Federal Rules of Procedure. Depositions shall be set so as to reasonably accommodate the availability of the deponents and the parties and shall be conducted in such a manner as to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court. As for these Rules, Malin is expected to comply with them. He has chosen to proceed without counsel, which is his right, but he has been given extensive latitude because he is *pro se*. Defendants are entitled to have this litigation proceed apace, and if Malin continues to sleep on his rights—as he appears to have done in the past—he will ultimately have to stand or fall on the above record that remains before the Court.

## VI.

In sum:

The Court interprets the scope of § 1514A's whistleblower protection provisions of SOX to mean that where an employee or former employee of a non-publicly traded subsidiary of a publicly-traded parent company alleges that he was discharged or otherwise discriminated against in violation the Act, the subsidiary is not

---

**12.** The Court notes that discovery has already been extended once, the periods for discovery and the filing of dispositive motions have expired, and Defendants have filed two dispositive motions, both of which are fully briefed.

subject to the provisions of the Act unless the employee establishes that the parent company was directly involved in some fashion in the discriminatory conduct complained of or that the subsidiary was acting as an "an officer, employee, contractor, subcontractor, or agent" of the parent company with respect to employment matters in general or the alleged discriminatory conduct in particular.[13] Based on the current state of the record, it appears that Siemens AG was involved neither in Malin's discharge nor in Defendants' decision not to rehire him and that no agency relationship exists between Defendants and Siemens AG of a nature sufficient to subject any of these entities to liability under § 1514A. However, subject to the conditions set forth above, Malin is given one final run at the matter, and accordingly Malin's Motion to Compel [Paper No. 30] is GRANTED IN PART and DENIED IN PART.

With respect to the other pending matters in this case:

Malin's Motion for Leave to Amend Complaint [Paper No. 14] is DENIED WITHOUT PREJUDICE. Defendant's first Motion for Summary Judgment [Paper No. 21] is GRANTED as to the applicable law but DENIED WITHOUT PREJUDICE as to the application of the factual record to that law. Defendants' Second Motion for Summary Judgment [Paper No. 32] is DENIED WITHOUT PREJUDICE. To the extent these motions are denied without prejudice, the moving parties may renew their motions at the conclusion of the above-authorized discovery period. In reviving or opposing these motions, the parties may present new arguments and submit additional record evidence and/or may incorporate by reference the relevant arguments and factual record set forth in their previous motions.

A separate Order will ISSUE.

## ORDER

It is for the reasons stated in the accompanying Opinion this 22nd day of September, 2008

ORDERED

1. Defendants' first Motion for Summary Judgment [Paper No. 21] is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**;
   a. The Motion is **GRANTED** as to the applicable law;
   b. The Motion is **DENIED WITHOUT PREJUDICE** as to the application of the factual record to the applicable law.

2. Plaintiff's Motion to Amend Complaint [Paper No. 14] is **DENIED WITHOUT PREJUDICE.**

---

**13.** To say that the whistleblower protections of SOX are unavailable against non-public subsidiaries is not to say that an aggrieved party is necessarily without a remedy. Various states, either by common law or statute, provide whistleblower protection or protection against wrongful discharge. *See generally* CHARLES R. RICHEY, MANUAL ON EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS ACTIONS §§ 8:45, 8:55, 10:1–34, App. B4 (2d ed. 2008). The Court understands that Malin has in fact filed complaints against Defendants with the Montgomery County, Maryland Office of Human Rights and the Pennsylvania Human Relations Commission, albeit alleging discrimi-nation on other grounds. *See* Defs. Mot. Summ. J., Ex U (Complaint of Alleged Discrimination in Employment filed with the Montgomery County Office of Human Rights alleging discrimination on the basis of sex, national origin, age, religious creed, disability, and retaliation for refusing to participate in the internal investigation of another employee's complaint of discrimination); Ex. V (Amended Complaint filed with the Pennsylvania Human Relations Commission alleging harassment and discrimination on the basis of religious creed, national origin, sex, age, religious creed).

3. Defendants' Second Motion for Summary Judgment [Paper No. 32] is **DENIED WITHOUT PREJUDICE**;

4. Plaintiff's Motion to Compel [Paper No. 30] is **GRANTED IN PART** and **DENIED IN PART.**

    a. Plaintiff is permitted a period of 90–days hereafter, *i.e.,* until December 22, 2008, to take discovery on the issue of whether Defendants acted as an agent of Siemens AG with respect to Plaintiff's hiring, supervision, and termination.

    b. No other discovery will be permitted, including but not limited to the alleged safety problems of Defendants' product.

    c. Discovery shall be conducted according to the parameters set forth in the accompanying Opinion.